REAUME *et al.*, *vs.* CHAMBERS *et al.*

1. The estate of tenancy by the curtesy is coeval in existence in this state with dower. It was introduced by the territorial act of July 4th, 1807.
2. Where a tenant by the curtesy makes a conveyance, that would, if he were seized in fee, give the grantee an estate for his (grantee's) life, *held,* that the grantee takes an estate for the life of the grantor.
3. Where a tenant by the curtesy executes a conveyance which operates to transfer an estate for the life of such grantor, *held,* that so long as this estate is outstanding, it prevents a recovery of the land by those claiming under the wife of such tenant by the curtesy.
4. *Lindell* v. *McNair,* (4 Mo. 380,) explained and affirmed. The case of *Lindell* v. *McNair* merely decided that a conveyance, executed by husband and wife, after January 19, 1816, (the date of the introduction of the common

law) and before June 22, 1821, (the date of the "act to enable husband and wife to convey real estate belonging to the wife,") in conformity to the statute law then in force, regulating conveyances and the relinquishment of dower interests, was effectual to convey real estate belonging to the wife. After the introduction of the common law, the Spanish law had no force here.

5. In order that a deed of a married woman may effectually convey her estate, the requirements of the law must be complied with. If it appear from the face of the deed that the deed has not been executed in the manner required by law, there can be no presumption of its proper execution as against her.

6. A deed executed November 16, 1819, in Illinois, by husband and wife, and acknowledged before a notary public there, is ineffectual to convey the wife's real estate in Missouri.

7. Where a deed, wanting words of perpetuity, is written on the back of another deed conveying an estate in fee, and contains the following clause— "have sold, ceded, released, and transferred all their part of the land sold by their co-heirs in the sale above;" held, that this reference is not of such a character as to enlarge the life estate conveyed to a fee simple.

8. Actual seizin of the wife's land is not necessary to entitle the husband to curtes.

9. A right of entry or of action for the possession of land may accrue to a married woman. A married woman having a right of entry which accrued before December 1st, 1835, may bring her action within twenty years after becoming discovert.

## Writ of Error to St. Louis Circuit Court.

This was an action in the nature of an action of ejectment, brought by Paul Reaume and others, to recover possession of one-fifteenth part of certain premises in the possession of defendants. The premises claimed are a portion of a lot of one by forty arpens, situate in the St. Louis or Big Mound prairie, in the city of St. Louis, and confirmed by act of congress to the representatives of Francis Moreau. Both plaintiffs and defendants claim under representatives of the said Francis Moreau. The plaintiffs claim immediately and directly through their mother, Marcelite Reaume, wife of Pierre Reaume, one-eighteenth part of the piece of ground in controversy in the present suit, and one-ninetieth part of the same through their great-aunt, Marie Collin, the daughter of the said Francis Mo-

reau. The defendants claim title as stated below in the stated case which follows, and which fully sets forth the facts of the case :

" The facts in this case were agreed ; both parties excepted to the decision of the court, and the following case is agreed upon, and that the above cause be open to objections by either party ; that the opinion of the Supreme Court may be had on the several points made respectively by the parties, and essential to the legal adjustment of their rights.

" The plaintiffs are children of Pierre Reaume and Marcelite his wife. The said Marcelite was the daughter of Louise Moreau, who was the daughter of François Moreau and wife of Joseph Menard. Louise, wife of said Menard, died before 1818, and left surviving her three children, one of whom was said Marcelite, married to Pierre Reaume in 1815, and died in 1834, leaving the plaintiffs, her children and heirs at law, and her husband, who is yet living, surviving her. The plaintiffs are aged as follows : Odille, aged 37 years in November, 1852, and married at 18 years of age ; Paul Reaume, aged at same time 33 years of age ; Augustus, aged 31 years ; Leonard, 29 years ; François, aged 24 years. Both parties claim under representatives of François Moreau, who died before 1800, leaving seven children, viz : Joseph, Alexis, Louis, Angelique (married to Antoine Mallet), Ellen (married to Pierre Céné), Louise (married to Joseph Menard), Marie, called also Manette (married to Louis Colin). Of these children, Louis, forty years before the trial, died intestate and without issue ; Louis Colin, husband of Marie, *died in March*, 1840, intestate and without issue ; his wife died in November, 1840, intestate and without issue : they were married prior to 1818. The remaining children of François Moreau *left lineal* descendants."

The defendants claim title under the deed of which the following is a copy, and also a copy of deed from P. Reaume and wife, endorsed on said original deed, the whole being on one

paper.  The original may be shown to the court, as it was to the Court of Common Pleas :

"Sachent tous ceux qui ces présentes verront, que nous soussignés, Joseph Hortiz et Eleonore mon épouse, Joseph Menard et Aurore Crely mon épouse, Pierre Céné et Helen Moreau mon épouse, Antoine Mallet et Angélique Moreau mon épouse, Manette Moreau, Joseph Moreau, Alexis Moreau, et Ositte mon épouse, tous héritiers de François Moreau, décédé, pour et en consideration d'une somme d' argent qui nous a été il y a quelque tems payé á notre pleine et entiere satisfaction par Mr. Pierre Chouteau, senior, et aussi pour la somme d' une piastre, argent légal des Etats Unis, qui nous a été payée à chacun de nous avant la signature de ces présentes, et dont par ces présentes nous donnous pleine et entiere quittance au dit Pierre Chouteau, et le déchargeons, lui, ses héritiers, hoirs ou ayant cause, nous avons vendu, cedé, quitté, delaissé, abandonné et transporté, comme de fait et par ces presentes nous vendons, cedons, quittons, delaissons, abandonnons et transportons au dit Pierre Chouteau, senior, ses héritiers, hoirs ou ayant cause, tous et chacun de nos droits, titres, actions et prétentions quelqu' elles puissent être tant en loi comme en cour d' équité, que nous ou l'un de nous pouvons avoir, ou peut-avoir, a un certain morceau de terre, situé au nord de la ville de St. Louis, dans le territoire du Missouri ; le dit morceau de terre contenant un arpent de front sur quarante arpens en profondeur, le front borné et déterminé par la ligne ou trait quarré de toutes les terres situées sur la même ligne de front, au sud par la terre concedée à          Lirette, au nord par une terre concedée à .          Vien et aujourd' hui la proprieté du dit Pierre Chouteau, et à l'ouest par les terres vacantes.  Garantissant la dite terre libre de tous dons, dettes, douaires au hypotheque ; et la garantissant chacun de nous en particuliers et avec notre épouse, contre nos héritiers ou ayant cause tant en loi comme en cour d' équité.  En foi de quoi, nous les parties ci-devant designées, avons signé et scellé le present, à St. Louis, le 3 Septembre de l' année mil huit cent dix-huit.

" Les mots, *avant la signature de ces présentes,* approuvés et interlignés à la premiere page. (*a*)

                sa
" ANTOINE × MALLET,      (L. S.)
         marque.

" MARIE COLLIN,       (L. S.)

            his
" JOSEPH × MENARD,     (L. S.)
        mark.

             sa
" JOSEPH × MOREAU,     (L. S.)
        marque.

" ALEXIS MOREAU,      (L. S.)

         sa
" OSITTE × ST. ANDRE, femme  (L. S.)
    marque.  d'ALEXIS MOREAU,

           her
" ANGELIQUE × MOREAU,   (L. S.)
        mark.

          his
" JOSEPH × ORTEAST,    (L. S.)
       mark.

      her
" ORO × MENARD,      (L. S.)
    mark.

       her
" LENOR × ORTEAST,    (L. S.)
     mark.

      his
" PIERRE × CENE,      (L. S.)
    mark.

      her
" ELLEN × MOREAU,     (L. S.)
    mark.

 " Signé et scellé en presence de—"

(*a*) This deed is correctly translated as follows : " Know all those who shall see these presents, that we, the undersigned, Joseph Hortiz and Ellenore, my wife ; Joseph Menard and Aurore Crely, my wife ; Pierre Cene and Helen Moreau, my wife ; Antoine Mallet and Angelique Moreau, my wife ; Manette Moreau, Joseph Moreau, Alexis Moreau, and Ositte,

" State or territory of Missouri, county of St. Louis. Personally came and appeared before me, the undersigned, a justice of the peace for the county aforesaid, Joseph Menard, Joseph Orteast, and Oro Menard and Leonor Orteast, who in my presence signed the within instrument of writing, and at the same time acknowledged it to be their and each of their hands and seals, acts and deeds, for the purpose therein contained, and that they executed the same of their own free and voluntary will.

" In witness whereof, I have hereunto set my hand, at my office, this ninth day of November, in the year of our Lord one thousand eight hundred and twenty.

"THOMAS R. MUSIC, J. P."

" Sachent tous ceux qui les presentes voiront, que Pierre Reaume, a cause de Marceline son épouse, fille et héritiere de Joseph Menard et Marie Louise Moreau, pour la considération de la somme de vingt piastres qu'il reconnoissent avoir reçu comptant du Sieur Pierre Chouteau, Sen.ᵣ de St. Louis, lui ont

---

my wife; all heirs of Francis Moreau, deceased, for and in consideration of a sum of money, which was paid to us sometime ago, to our full and entire satisfaction, by Mr. Pierre Chouteau, sr.; and also for the sum of one dollar, lawful money of the United States, which has been paid to each of us, before the signing of these presents; and of which we do, by these presents, give to the said Pierre Chouteau, his heirs and assigns, full and complete acquittance and discharge; we have sold, granted, quit claimed, remised, made over, and conveyed, as in fact, and by these presents we do sell, grant, quit claim, remise, make over, and convey to the said Pierre Chouteau, sr., his heirs and assigns, all and each of our rights, titles, actions and claims, whatever they may be, which we or each of us has or can have, both in law or in a court of equity, to a certain parcel of land, situated north of the village of St. Louis, in the territory of St. Louis; the said parcel of land containing one arpent in front by forty arpens in depth; the front bounded and limited by the line, or ' trait quarre ' of all the lots situated on the same front line; on the south by land conceded to Lirette; on the north, by a lot conceded to Vien, and to day, the property of said Pierre Chouteau; and on the west, by vacant lands; guaranteeing the said lands free from all gifts, debts, liabilities, or incumbrances; and each one of us, with our wives, guaranteeing it individually against our heirs or assigns, as well in law as in a court of equity. In testimony of which, we, the parties hereinbefore named, have signed and sealed the present, at St. Louis, this 3d day of September, of the year eighteen hundred and eighteen."

The words "before the signing of these presents," approved and interlined on the first page. Signed and sealed in the presence of.

vendu, cedé, quitté et transporté toute leur part de la terre vendu par leur cohéritiérs dans la vente cidessus. En temoignage de quoi, ils ont signés et scélé ce sixième jour du mois de Novembre, l'an mil huit cent dix-neuf—en presence des temoins, soussignés.

sa<br>
" PIERRE × REAUME, ·(seal.)<br>
marque.

sa<br>
" MARCELINE × REAUME, (seal.)<br>
marque.

" RAPHAEL WIDEN, ⎫<br>
" PIERRE MENARD." ⎭

" State of Illinois, Randolph county, *ss.* Be it remembered that before me, Raphael Widen, notary public for the county of Randolph, personally came the within named Pierre Reaume and Marceline his wife, who severally acknowledged and declared that the foregoing sale for their respective part of a tract of land in the within deed described, from them to Pierre Chouteau, senr., was their voluntary act and deed, for the purposes therein expressed.

" In testimony whereof, I, Raphael Widen, have hereunto set my hand and affixed the seal of my office, this 6th (Seal.) day of November, A. D. one thousand eight hundred and nineteen, and of the independence of the United States the forty-fourth.

" RAPHAEL WIDEN, N. P.

" Filed for record, June 6th, 1822.

" A. GAMBLE, Clerk."

" Pierre Chouteau, the grantee in said deed, conveyed to John Mullanphy, by deed bearing date the 30th day of October, 1819. The defendants have all the title of said *John Mullanphy* in the premises in question. In relation to the deed from Antoine Mallet and others to Pierre Chouteau, the following facts were admitted: That it was written by François M. Guyol, who, at the date thereof, resided in St. Louis, and was a justice of the peace, and did the business of conveyancing for some of

the then inhabitants of St. Louis. He was a Frenchman, and went from St. Louis to New Orleans to reside, in 1820, and died there about 1847 or 1848. The signatures, Antoine Mallet, Angelique Moreau, Joseph Moreau, Ositte St. André and Pierre Céné, were also in the handwriting of Guyol. The words ' sa marque' are also in the handwriting of Guyol, where he wrote the names ; that the name of Ellen Moreau is in the handwriting of E. H. Hawley, who was formerly a justice of the peace in Florisant, but not acting- at the date of the supposed deed. The interlineation is in 'Guyol's handwriting, and the note of it at the bottom of the instrument, as also are the words, ' signed, sealed,' &c.,*at the bottom. Alexis Moreau, Joseph Moreau and Ositte St. André, admitted their signatures to the instrument, in the fall of 1818. About thirty-two years before the trial, Mallet and Céné, who then resided at Florisant, at one time returned from St. Louis with goods in a cart ; about that time or soon after they said they had sold their land in St. Louis to Mr. Chouteau. Their wives went with them to St. Louis at the same time, and returned with them. Neither of the wives said any thing about the sale, nor is there any evidence that it was spoken of in their presence. The signature of Marie Collin to said instrument is in the handwriting of her husband, Louis Collin. The deed from Reaume and wife, in the same paper, is in the handwriting of Raphael Widen, and his name subscribed thereto as a witness, is in his handwriting. The name of Pierre Menard, a subscribing witness thereto, is the proper handwriting of said Pierre Menard, and the certificate of acknowledgment thereon is in the proper handwriting of said Widen. Said Widen and Menard are both dead, and died before the commencement of this suit. The certificate and signature of Thomas R. Music on said instrument are in his handwriting, and he was at the date thereof an acting justice of the peace. The signatures of Joseph Menard and Joseph Orteast, and Oro Menard and Eleanor Orteast, are in the handwriting of said Thomas R. Music, who died more than ten years since. Joseph Menard and Eleanor Or-

teast were children of Louis Menard, before mentioned. The endorsement on the deed, ' heirs of Moreau to Chouteau,' is in Guyol's handwriting. The words on the instrument, ' for Mr. Mullanphy,' are in the handwriting of E. Baker, who was clerk in the recorder's office of St. Louis county, at the record of said instrument. When a deed was left at that date, it was usual to make endorsement of the name of the person to whom to deliver it. The words, ' for Mr. Mullanphy,' would indicate, according to the then practice in the recorder's office, that Mr. Mullanphy left the instrument for record. It was recorded in June, 1822.

" It is also admitted that John O'Fallon was executor of the estate of John Mullanphy, who died in August, 1833; that said executor found said deed amongst the deeds and papers of said Mullanphy, after his death, in a trunk, where such papers were deposited; that it has been since in the custody of said executor and the heirs of said Mullanphy, and was produced on the trial by the defendant from such custody—the wife of Charles Chambers being a daughter of said John Mullanphy.

" It was also admitted that John Mullanphy, under the deeds herein mentioned, took possession of the land in controversy in the spring or summer of 1820, and built a house thereon in the fall of 1820, and held possession until his death in 1833; that the defendants claim under said John Mullanphy, and have his title, and have been in possession of said premises since the death of said John Mullanphy, claiming title thereto. Pierre Chouteau died in 1849. Pierre Reaume and wife were never actually in possession, occupying themselves the land in controversy. It was a field lot, which had been occupied by Francis Moreau prior to his death, which was in 1798, and was not held adversely by any one at the date of the deed from Pierre Reaume and wife to Pierre Chouteau, sr.

" The defendants, upon the facts as admitted, read the several deeds in evidence, and claimed that the deed to Pierre Chouteau from Antoine Mallet and others was duly executed. The plaintiffs claimed 1-15th of the premises in question under

Reaume v. Chambers.

the evidence. The damages and monthly value were agreed upon, and the Court of Common Pleas gave judgment for the plaintiffs for an undivided ninetieth part of the premises in question.

"" The plaintiffs and defendants both filed motions for review, which were overruled, and both bring the cause to this court by writs of error. The plaintiffs claiming 1-15th of the premises, and defendants claiming a judgment in their favor.

" The suit was commenced in the Court of Common Pleas on the 7th of July, 1851.

"" The land included in the deed to Pierre Chouteau, and conveyed by him to Mullanphy, was partitioned among the heirs of John Mullanphy, by petition of the heirs addressed to the Court of Common Pleas, which made an order to partition at the August term, 1841. The commissioners reported at May term, 1842, which was approved 14th May, 1842, and recorded 17th March, 1843, under which the heirs of Mullanphy now hold in severalty."

The case was submitted to the court sitting as a jury, upon an agreed statement of facts, and the court found that the plaintiffs were entitled to recover one-ninetieth of the premises sued for.

*Williams* and *Glover & Richardson*, for Reaume and others, plaintiffs in the court below, plaintiffs in error, and also defendants in error here. (*a*)  1. The main question involved in this cause springs up upon the construction of the instrument executed by Pierre Reaume and wife, as is set forth in the stated case, and of which the following is a correct translation: " Know all those who shall see these presents, that Pierre Reaume, for the sake of (*a cause de*) Marceline, his wife, daughter of Joseph Menard and Marie Louise Moreau, for the consideration of the sum of twenty piastres, which *he* acknowledged to have received, ready money, from Mr. Pierre

---

(*a*) Mr. Glover's brief is not to be found on file, and it is not attempted to set forth the line of argument pursued by him.—[REP.

Chouteau, senr., of St. Louis, to him have sold, made over, parted with and transferred all their part of the land sold by their co-heirs in the sale above. In witness," &c. At the date of this paper, (November 16, 1819,) the wife owned the fee in the land mentioned, by inheritance from her grandfather. She had never been in possession of the land, and at the date of this paper it was not in the possession of any one claiming adversely to her. What estate did this deed create in Chouteau? If the common law prevailed here at its date, then it certainly was insufficient to convey her real estate. It has been repeatedly decided by our Supreme Court that the act of 1816, introducing the common law, rendered it necessary that an instrument conveying land should have a seal, and required the word heirs therein to create a fee simple estate in the grantee. If the instrument executed by Pierre Reaume and wife be a deed at all, it was the deed of the wife, she being the main grantor, and containing no words of inheritance, could convey only a life estate to Chouteau, the grantee. 2. Pierre Reaume and wife were married prior to 1816, and curtesy was not introduced into this state prior to 1816. 3. The law of the place where land is situate, existing at the time of a marriage, governs the rights of the husband as to the estate then owned by the wife. (Sto. Confl. of Laws, § 187 n. 3; Riddick v. Walsh, 18 Mo. 520.) 4. If Pierre Reaume was tenant by the curtesy initiate, he had an estate for the life of the wife; this estate was separate from curtesy consummate, which did not exist until the death of the wife. (Watson v. Watson, 13 Conn. 83; Starr v. Pease, 8 Conn. 541; Wheeler v. Hotchkiss, 10 Conn. 230; 2 Binn. 80; 16 Mass. 188; 5 Dana, 257; 5 Cow. 102.) 5. The husband had a present estate that he could convey. If the deed passed that or could pass it, it will not be presumed to pass one that was contingent or to be hereafter acquired, unless there were some words of estoppel, &c. (McCorry v. King, 3 Humph. 267; see 8 Humph. 325.) 6. If Pierre Reaume was tenant for life, he could create an estate less than his own, and it is to be presumed that he intended doing so. (1 Cruise,

§ 95.) An estate for a man's own life is higher than one for the life of another. (4 Kent, 26.) 7. If Reaume did convey to Chouteau an estate for his life, it merged into the larger estate in Chouteau ; that is the estate for Chouteau's life. (4 Kent, 99–103.) 8. To give curtesy, there must have been possession of the land, at least such a seizin as would enable her children to inherit from her, &c. (4 Kent, 29–30 ; 2 Black. 312 ; 5 Cow. 74 ; 1 How. U. S. 87.) . 9. No deed can be presumed against Mrs. Collin. 10. Under § 11, of art. 3, of the act of 1835, twenty years were allowed to Mrs. Collin, instead of ten. Her right of action accrued prior to 1835 ; indeed, prior to 1818, or 1825, and therefore the 11th section of the 2d article of the above act gave her twenty years in which to sue.

The court is also referred generally to the following cases : Lindell v. McNair, 4 Mo. ; Picotte v. Cooley, 10 Mo. 312 ; Childress v. Cutter, 16 Mo. 24 ; Norcum v. Youse, 12 Mo. 588.

*Haight* and *Shepley*, for Chambers and others. 1. The deed from Pierre Reaume and wife, of the 16th of November, 1819, passed their interest in the premises to Pierre Chouteau. This conveyance is upon the same paper with the original deed. It is in French, and is correctly translated thus : " Know all those who shall see these presents, that Pierre Reaume, in right of (or together with) his wife Marceline, daughter and heiress. of Joseph Menard and Marie Louise Moreau, for the consideration of the sum of twenty dollars, which they acknowledge to have received in cash from Mr. Pierre Chouteau, senr., of St. Louis, have sold, ceded, released and abandoned all interest in the land sold by their co-heirs by the above act of sale. In witness whereof, they have signed and sealed this 16th of November, 1819, in presence of the following witnesses." This deed was duly signed and sealed by Pierre Reaume and wife ; and the only question of any difficulty upon it is, that it is to Pierre Chouteau, and the word heirs are not mentioned. Our answer to this is, it refers to the deed on the same paper, and.

adopts, by necessary inference, the language of the conveyance. They sell all their part of the land sold by their co-heirs in the above or preceding sale. The just, fair and true interpretation of the language is, they sell as their co-heirs have sold, and adopt their deed. They sell all their part, or all their interest in the land above described, as sold by their co-heirs. The rules of interpretation upon such a deed of so ancient a date, should be liberal and not verbal. The intention of the parties should govern; and there is enough on the face of this instrument to justify the conclusion that they intended to convey, in as ample and full a manner, and as great an estate as their co-heirs had conveyed in the instrument on the same paper to which they refer; although the word heirs was in general necessary, after the introduction of the common law, to convey a fee simple, yet where the design was evident to convey a fee by reference to other deeds, or by the use of equivalent language, a fee passed. Thomas' Coke, p. (in brackets,) gives instances. (Hilliard on Real Property, p. 606.) The case put in Coke is where a grantee reconveys the lands " as fully as they were granted to him." (Lytle v. Lytle, 10 Watts, p. 260; Shep. Touch. 102; 4 Bing., N. C., 456; 11 Metc. 84.) No argument can be drawn from the phraseology of the deed. The persons conveying are evident from the use of the plural all through the deed. 2. As to the interest derived by the plaintiffs under their mother, it was subject to the life estate of the father; and as there is no dispute but he made a conveyance effectual to pass a life estate, it is good so long as he lived. On this point our position is: Pierre Reaume, at the date of his deed to P. Chouteau, was tenant by the curtesy initiate, and had an estate for his own life, which was effectually transferred by that deed. (5 Cow. 75; 1 Hilliard on Real Prop. 111.) Supposing that the deed of Pierre Reaume and wife passed only a life estate, it passed an estate for the life of the grantor. (4 Cow. 324; 1 Hill. 100, 101, 112, 116; 8 Johns. 262.) 3. The plaintiffs cannot recover any interest which Marie Collin had in said premises, and the court ought, upon the facts as

agreed on, to have found for defendants. The deed was properly in evidence before the court. A deed thirty years old, and possession under it for that period, and found in the proper custody, and not attended with any circumstances of suspicion, may be read in evidence as an ancient deed. (1 Grant on Ev. 638 ; Wilson v. Betts, 4 Denio, 201 ; 3 Johns. C. 283–286 ; Carroll v. Hutchinson, 1 Harr. & John. 167; 2 B. Monroe, 429 ; 5 Barr. 492.) These presumptions arise as well against married women as against others. (See Bustod v. Gates, 4 Dana, 441 ; 16 Pick. 137 ; 17 Pick, 255.) The deed was properly in evidence. We are now to consider its effect. Though not signed by the husband, the execution of the deed by Marie Collin was effectual to pass her title in the estates described in the deed. The cases decided by this court have already decided this question. They hold that a conveyance by a *feme covert* after 1816, and prior to 1821, is as effectual to pass her interest, if made with her husband's consent, as if she were a *feme sole*. (Lindell v. McNair, 4 Mo. 330 ; Picott v. Cooley, 10 Mo. 312 ; Youse v. Norcum, 12 Mo. 549.) They decide such conveyances to be effectual under the Spanish law ; and in the absence of any provision for conveyances by married women, the same mode of transfer remains. As to power under the Spanish law of a *feme covert* to pass her paraphernal property, see 1 White's Collection, marginal pages, 53, 54 ; Brown's Civil and Admr. Law, 269 ; Domat's Civil Law (Cushing's ed.) part 1, book 1, sec. 4, p. 390–1–2–3. By Spanish law, no writing was necessary to pass land. The distinction between real and personal property was unknown. The paraphernal property of the wife was as absolutely under her disposition and control as if she were a *feme sole*. Authentic acts proved themselves, being made before public officers ; other contracts, whether verbal or written, required proof. That is supplied in this case, as we show that it was done in the presence and with the consent of the husband, he writing her name. There is a case in 12 Mar. 242, where it is said that wife could not alienate without husband's con-

sent; but this is a modification of the doctrine which had its rise in the Louisiana code, but it makes no difference in this case, as we prove the husband's consent. Thirty years' possession under a deed which comes from the right custody, and unattended with any suspicious circumstances, proves itself. (Coventry on Conveyances, 12—24 L. Lib.; Doe, d. v. Woolley, 8 B. & Cr. 22; 3 Whart. 149.) 3. Upon the supposition that the deed of Marie Colin was not effectual to pass her estate, the remaining question is upon the statute of limitations. We say that those claiming under Marie Colin are barred by the act of 1835, § 4. Marie Colin was a *feme covert* when she acquired her title. Her husband died in March, 1840, and she died in November, 1840. The possession of defendants commenced in 1820, and of course twenty years had run at the time of Louis Colin's death. The statute began to run against Marie Colin in March, 1840, the date of her husband's death; and of course continued to run against her heirs after her death; more than ten years elapsed between her husband's death and the commencement of suit. The fourth section of the statute of 1835 is: "If any person entitled to commence any action in this article specified, or to make any entry, be, at the time such title shall first descend or accrue, a married woman, the time during which such disability shall continue shall not be deemed any portion of the time in this article limited for the commencement of such suit, or the making such entry; but such person may bring such action or make such entry after the time so limited, and within ten years after such disability is removed, but not after that period." See also section 5, to the same effect. The reading of this statute would seem to be very plain, although persons under disability are protected; yet when the disability is removed, the time begins to run, and they have ten years after such disability is removed. There can not be successive disabilities in different persons claiming the same title. It will be conceded, when the statute has commenced running, its effect or operation will not be stayed by any disability in the person upon whom the titles

may descend, or to whom it may come. The plain and obvious meaning of the statute is, that persons under disability, when their right of entry or of action accrued, shall have ten years after the removal of the disability in which to commence their suit. Sec. 7, art. 3, p. 305 : "No person shall avail himself of any disability enumerated in this act, unless such disability existed at the time of this right of action, or entry accrued." Section 11 of art. 3 was supposed to give the act a different construction : "The provisions of this act shall not apply to any actions commenced, nor to any case where the *right of action or of entry* shall have accrued before the time when this act takes effect, but the same shall remain subject to the laws now in force." When did the right of action or of entry of Marie Colin first accrue ? Clearly she had neither the right of action nor of entry until her husband's death. During his life he had the usufruct—the possession—his life estate was liable for his debt—might be assigned or transferred—the wife was precluded from any separate or distinct enjoyment until his death. She could not bring an action ; her right of action did not, therefore, accrue until her husband's death, in March, 1840. Then her right of action accrued, and then the statute began to run. Under a similar statute in New York, this construction has been maintained. (Jackson *v.* Johnson, 5 Cow. 74 ; Wilson *v.* Betts, 4 Denio, 201 ; Carpenter *v.* Liebenham, 2 Barb. Chy. Rep. 314 ; 2 Preston on Abstracts, 341 ; 7 B. Monroe, 236. See also Hilliard on Real Property, ch. 21, Statutes of Limitations, vol. 2, p. 193–4 ; 1st ed. of vol. 2, and cases there cited ; 2d ed., p. 778–181 of vol. 2.)

SCOTT, Judge delivered the opinion of the court.

1. Pierre Reaume marrying in 1815, by the birth of issue during the same year became tenant by the curtesy initiate. The estate of tenancy by the curtesy must be regarded as co-eval in existence with the estate in dower. When the law broke down the community existing under the Spanish government

and created dower for the wife, it at the same time recognized the existence of the tenancy by the curtesy for the husband. In the case of Riddick *v.* Walsh, (15 Mo. 519,) this court held that the territorial act of July 4, 1807, abolished the Spanish law of community and gave the wife dower in lieu of her interest under the Spanish law. As a tenancy by the curtesy is recognized by the same act, it must be intended that the husband's right in the community was taken away at the same time, and the curtesy given as a part equivalent for it.

2. P. Reaume, being tenant by the curtesy initiate, and having a life estate by virtue of his marriage, his conveyance operated to convey to Pierre Chouteau an estate during his (Reaume's) life. He had no power to convey a life estate to Chouteau, as his interest in the estate did not permit it. Had Reaume been seized in fee, his conveyance to Chouteau would have given him (Chouteau) a life estate, that being deemed the most valuable in law. (Co. Lit. 1 vol., 30, *a*; 1 Hilliard on Real Property, 120.

3. Pierre Reaume being still alive, his life estate is outstanding in Chouteau or his representatives, and prevents a recovery by the plaintiffs, who are children of the marriage of P. Reaume with their mother as to the share of their grandmother, Louisa, as well as to the share of Lewis, who died without children prior to the conveyance to Chouteau in 1819, and of whose interest so much as was owned by the mother of the plaintiffs passed by Reaume's deed.

4. The case of McNair *v.* Lindell, (4 Mo. 380,) decides nothing more than that a conveyance made by the husband and wife during the period between the introduction of the common law on January 19th, 1816, and the statute enabling husband and wife to convey real estate belonging to the wife, passed on the 22d June, 1521, in pursuance *to the statute* law then in force regulating the conveyances of married men's estates and the mode of relinquishing dower interests therein, will be effectual to convey the real estate belonging to the wife. That case goes so far and no further. It leaves it a matter of doubt

whether the determination rested on the common law or on the Spanish law. If on the Spanish law, then the Spanish law was retained only so far as to sustain that case and those similarly situated, and no further. The inducement which has prevailed with this court heretofore, in upholding that opinion, was a persuasion that men acting under it had acquired rights which it was deemed unwise to disturb. After the introduction of the common law, the Spanish law no longer had any existence here. It has only been regarded in the interpretation of contracts which had been made before its abrogation and on the adjustment of rights which had accrued prior to the introduction of the common law, just as we would look at this day to the laws of Spain, in interpreting a contract which had been made in that kingdom.

5. The principle that ancient deeds accompanying the possession, and produced from the appropriate custody, prove themselves, has no application to this case. At the date of the deed in question, the law prescribed a mode by which estates should be conveyed. If that law was observed, this court has held that married women might convey their estates by complying with its provisions. If the law then in force regulating conveyances has not been complied with, how can we presume that a deed has been regularly executed when we see from the very instrument produced, in whose aid the presumption is sought, that the law, in almost every particular, has been violated? Can we presume that the law has been complied with when we see, from the very face of the deed, that it has not been? When an instrument itself tells us that the law has not been observed in its creation, how can we, from length of time or any other consideration, say that it has been? Can a presumption in favor of a deed arise when the deed itself tells us that such a presumption is false? The statute in force at the date of the deed required the wife to join in it with her husband, and acknowledge it before the proper officer, and to declare that she executed it voluntarily and without compulsion or undue influence of her husband. Here the wife's name alone appears to the deed,

and it is not acknowledged at all. (Beall v. Lynn, 6 Harr. & John. 351.)

6. The deed of P. Reaume and his wife, executed in Illinois, and acknowledged before a notary, is of no validity as against her. There is no pretence that a deed so executed and acknowledged is a compliance with the statute regulating conveyances then in force.

7. The deed, moreover, wants words of perpetuity, which were essentially necessary at its date to create an estate in fee simple. Its reference to the deed, on the back of which it was written, is not of such a character as to enlarge the life estate conveyed to a fee simple. This is one of those cases in which the bare intent of the parties cannot prevail. The law had appropriated certain words for passing a fee simple in real estate, and unless they were used, the intent, however forcibly expressed, could not prevail.

8. As to the question whether actual seizin of the wife's land is necessary to entitle the husband to curtesy, we are of the opinion that such an idea never prevailed here. Whatever may be the common law on the subject, the circumstances of the country demand a modification of the rule. Titles to land conferred by the United States, were supposed to give seizin in deed to purchasers. Descents with us depend not on actual seizin, but on the statute regulating descents, and we have allowed the conveyance of lands whilst in the adverse possession of others. (Green v. Leter, 8 Cr.; Cook v. Foster, 2 Gilman, 652 : 4 Kent, 30.)

9. Mrs. Colin was a *feme covert* when her right of entry accrued. It is clear, from the language of the statute of limitations, that a right of entry may accrue to a married woman. The 16th section of the third article of the act prescribing the times of commencing actions, directs that the provisions of that statute shall not apply to cases where the right of action or entry shall have accrued before the first day of December, 1835, but the same shall remain subject to the laws then in force. By the law in force prior to the 1st December, 1835, a married

woman was allowed twenty years within which to bring her action after she was discovert. Mrs. Colin's husband died in 1840, consequently she had twenty years from his death within which she might bring her action, her right of entry having accrued prior to the 1st of December, 1835.

Each party having sued out a writ of error on the judgment, the entire judgment is affirmed, each party paying the costs of his writ in this case.

RYLAND, J. I agree to affirm the judgment, but do not assent to all the views taken by Judge Scott. I differ with him in some important propositions laid down in the above opinion.