## SAMUEL P. MAJORS et al., Appellants, v. JAMES CRYTS et al.

### Division One, February 29, 1912.

1. **CURTESY: Limitation: No Seizin in Wife.** The seizin of the wife that will entitle the husband to curtesy in her lands may be either seizin in deed or seizin in law—that is, actual seizin, or the right to immediate entry. But the deceased wife's husband cannot have curtesy so long as her father has curtesy, for then the wife did not have the right to immediate entry. So that where plaintiffs' grandmother died the owner of the land in 1864, leaving a husband in possession, who lived till 1889, and plaintiffs' mother died a few months after her mother's death, leaving a husband, who died in 1907, and in 1881 plaintiffs' father, grandfather, uncles and aunts made a deed to the whole and the grantees went into possession and were in possession when the suit was brought in 1907, plaintiffs are barred by limitations, for plaintiffs' mother was not entitled to immediate entry during her life.

2. ————: ————: **Cotenancy.** The husband who has curtesy in his deceased wife's lands is not a cotenant with her children. The possession of the tenant by the curtesy is exclusive. The rents and profits are all his so long as he lives. There is no element in his possession of a tenancy in common with the children of the wife.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort*, Judge.

AFFIRMED.

*Wilson Cramer* for appellants.

(1) Rebecca J. McMillan having owned the land in fee and having died leaving her husband, John McMillan, and children by him surviving, he was tenant by the curtesy and entitled to the possession and control of the land during his lifetime, but the declaration in defendants' first instruction that "the estate of Rebecca J. McMillan was simply a reversion after such life estate had terminated" is erroneous. Mey-

ers v. Hanbrough, 209 Mo. 495; DeHatre v. Edmonds, 200 Mo. 246. (2) Upon the death of Rebecca J. McMillan the real estate descended to her children, each becoming entitled in fee to an undivided one-sixth. Mary Ann McMillan having married P. P. W. Majors and died leaving him and children by him surviving, her interest passed by descent to her children, the plaintiffs in this suit, and her husband immediately became by law entitled to curtesy. McBreen v. McBreen, 154 Mo. 322. (3) After John McMillan died in 1889 or 1890, the defendants held the one-sixth interest belonging to plaintiffs by virtue of the deed of March 31st, 1881, executed by P. P. W. Majors, tenant by the curtesy, and this holding could not possibly become adverse until after the death of P. P. W. Majors in May, 1907, when plaintiffs' cause of action accrued.

*Wammack & Welborn* for respondents.

(1) Before a husband can have any curtesy right in the real property of his wife she must have either had the actual possession of the property, or the right to the immediate possession during coverture and before her death. Martin v. Trail, 142 Mo. 85; Dozier v. Toalson, 180 Mo. 546; Cochran v. Thomas, 131 Mo. 274. (2) The conveyance of the entire estate in a tract of land by one tenant in common, as sole owner, amounts to an ouster of his cotenants and the Statute of Limitations commences running in favor of his grantee from that time. Long v. Stapp, 49 Mo. 506; Hendricks v. Musgroves, 183 Mo. 310; Dunlap v. Griffith, 146 Mo. 283; Campbell v. Gas Light Co., 84 Mo. 352.

VALLIANT, J.—Ejectment for an undivided one-fourth of lot 2 in northeast quarter of section 2, township 25, range 9, Stoddard county.

There is very little, if any, dispute about the facts. Plaintiffs inherited the interest sued for from their mother and are entitled to recover unless their right of action is barred by the Statutes of Limitations, and it is barred unless their father, who survived their mother, had an estate by the curtesy in the land which prevented the running of the statute during his lifetime.

Rebecca J. McMillan, who was the plaintiffs' grandmother, is the common source of title; she died in June, 1864, leaving her husband, John McMillan, and their six children, of whom the plaintiffs' mother, Mary Ann McMillan, was one. Mary Ann married P. P. W. Majors, plaintiffs' father, and died in November, 1864, leaving her surviving her husband and three children, who are the plaintiffs in this suit. John McMillan died in 1889 or 1890. P. P. W. Majors died in 1907. Two of the six children of Rebecca J. McMillan died unmarried and without issue.

In 1881 Daniel W. Horton obtained a deed purporting to convey all of the lot 2 above mentioned, signed by John McMillan and the three then surviving children of Rebecca, and signed also by P. P. W. Majors; Horton went into possession under the deed, which was duly recorded. The title he acquired by that deed has since passed by mesne conveyances to the defendants, and the possession taken by Horton in 1881 has continued in him and his successors in his title until the present time.

Mary Ann having died during the lifetime of her father, John McMillan, therefore before the termination of his estate by the curtesy, was never in the actual possession of the interest she inherited from her mother, and the court held that for that reason her husband acquired no estate by the curtesy; that the Statutes of Limitations began to run against the plaintiffs at the death of John McMillan in 1889 or 1890;

this suit was begun in 1907. The judgment was for the defendants and the plaintiffs appeal.

I. There is no question but that John McMillan's estate by the curtesy began at the death of his wife in 1864, and continued until his own death in 1889 or 1890. The title in fee descended to the children of Rebecca at her death in 1864, and they would then have been entitled to immediate actual possession if it had not been for the curtesy estate of their father, but that estate intervening excluded them from actual possession or right of possession until his death, which did not occur until after the death of plaintiffs' mother.

The question is did P. P. W. Majors, plaintiffs' father, ever have an estate by the curtesy in the land sued for? If he did have such an estate it continued until his death in 1907, and the plaintiffs are not barred; if he did not, the statute began to run against them on the death of their grandfather and their suit is barred.

Under the common law the essentials to an estate by the curtesy were four, marriage, seizin of the wife, birth of child capable of inheriting, and death of the wife. The seizin required by the common law was actual seizin, but this court in an early case decided that actual seizin was not necessary. [Reaume v. Chambers, 22 Mo. 36, 1. c. 54.]

In that case the court per Scott, J., said: "As to the question whether actual seizin of the wife's land is necessary to entitle the husband to curtesy, we are of the opinion that such an idea never prevailed here. Whatever may be the common law on the subject, the circumstances of the country demand a modification of the rule. Titles to land conferred by the United States were supposed to give seizin in deed to purchasers."

In that case, as we understand it, the wife, though never having been in actual possession, had, during

coverture, the right to immediate possession and that was held to be sufficient. That has ever since been the doctrine of this court.

In Washburn on Real Property, vol. 3, sec. 1953 (6 Ed.), the author says: "There is a seizin in deed and a seizin in law, and the difference between the two is, that in one case an actual possession has been taken and in the other there is a right like that of an heir upon descent from his ancestor, while the possession is vacant, before he has made an actual entry." Seizin in law as there defined does not mean that there is a constructive possession in the heir when there is an estate in another person intervening to postpone his right of entry; it means a right of immediate entry. Seizin of the wife is essential to the husband's right of curtesy, but under the decisions of this court it may be either seizin in deed or seizin in law. [Reaume v. Chambers, 22 Mo. 36; Cochran v. Thomas, 131 Mo. 258; Martin v. Trail, 142 Mo. 85; Dozier v. Toalson, 180 Mo. 546.] And that seems to be the general rule in this country. [1 Washburn on Real Property (6 Ed ), sec. 328.]

In Cochran v. Thomas, there is an expression that implies that actual possession by the wife is necessary, but that *dictum* was corrected in Martin v. Trail.

Appellants present the point that John McMillan and his children were tenants in common, that his possession was their possession, and that therefore their mother through him was in possession. Tenants in common have, *inter sese,* a common right of possession, a common right to rents and profits. and if one takes more than his share of the rents and profits he may be held to account to his cotenant. The possession of a tenant by the curtesy is exclusive, the rents and profits are all his as long as he lives, there is no element of tenancy in common in his possession.

There can be no estate by the curtesy in the husband when there has been no seizin in the wife, either in deed or in law.

We conclude therefore that in the case at bar there was neither seizin in deed nor seizin in law in the plaintiffs' mother; she having died before her right of possession accrued, therefore her husband did not have an estate by the curtesy, and the plaintiffs' right of action accrued at the death of their grandfather in 1890, and was barred by the Statute of Limitations when this suit was begun.

II. The judgment goes farther than a judgment at law in ejectment should go. The judgment is that the plaintiffs take nothing by their writ and the defendants go without day and recover their costs; so far it is right, and should have gone no farther, but it did go on to decree no title in plaintiffs and full title in defendants. This was doubtless because there were in the third paragraph of the answer statements to the effect that the deed to Horton, under whom defendants claim, which was executed by the other heirs and parties in interest, purported to convey the title of plaintiffs and that those parties accounted to plaintiffs for their share of the purchase money and plaintiffs accepted it. But there was not a word of proof offered to sustain those allegations; the sole question litigated was whether plaintiffs' right of action was barred by the Statutes of Limitations. We do not deem this error of any serious consequence, because the title of defendants by adverse possession is so clearly established that it puts the case at rest.

The judgment is affirmed. All concur.