MARTIN *et ux.*, *Appellants*, v. TRAIL *et al.*

In Banc, December 14, 1897.

1. **Curtesy**: SEIZIN OF THE WIFE. Right to actual possession by the wife during coverture is a necessary condition to the right of the husband to curtesy; and the common law rule making the wife's seizin during coverture necessary to the husband's right to curtesy, has not been modified any further than this, that her seizin now may be the right to possession rather than actual possession.

2. **Life Tenant**: SEIZIN. Seizin is in the life tenant during the whole period of the life estate.

Martin v. Trail.

3. **Curtesy in Reversionary Estate.** If the estate of the wife is a reversionary one, subject to a prior freehold estate in another, her constructive seizin of such reversion will not entitle her husband to curtesy unless the prior freehold determine during coverture.

4. ———: DOWER: PARTITION: CASE STATED. A husband died and by way of dower the land in controversy was deeded by his two sons to his widow "during her life, remainder to grantors and their heirs." One son died leaving an only daughter, and that daughter died before the dowress, leaving her husband and an only daughter, the plaintiff. In a partition suit after the death of the dowress, the court set aside this land to the plaintiff subject to the life curtesy of her father. *Held*, · that he had no curtesy therein, because the life estate had not terminated before the death of his wife. *Held*, also, that the judgment in partition was not a bar to this action in ejectment.

5. ———: PARTITION JUDGMENTS: RES ADJUDICATA. Judgments in partition are as conclusive on the parties to the suit on all issues over which the court has jurisdiction and which were thereby determined, as other judgments, and are no more subject to collateral attack.

6. ———: ———: ———: CASE STATED. The partition suit was *ex parte*. This plaintiff, twelve years old, was represented by William Green as guardian, and he also represented her father as attorney. No evidence was offered to prove the curtesy. The petition charged that the petitioners are tenants in common, and that this plaintiff "is entitled to one half of said land, subject to the life interest therein of her father;" and the prayer was that "the court order that one half of said land be set apart" to plaintiff and her father "according to their respective interests." The court found that plaintiff was "entitled to one half of said lands subject to the life interest of her father," and the commissioners were appointed to "set apart to said" plaintiff "the equal one half of said lands and to the other parties interested the other half, to be held according to their rights as herein declared;" and the commissioners reported: "We allot and set off to" plaintiff "subject to the life interest therein of" her father, the lands in controversy. *Held*, that the purpose of the partition suit was clearly to divide the lands into two equal divisions, and to set off one of them to plaintiff and her father; that the curtesy right of the father in the land was not in issue, and hence was not determined; that that suit could not bar this suit in ejectment by the plaintiff against her father for possession of the lands. *Held*, also, as this conclusion has been reached, that it is unnecessary to determine whether or not the court would have had jurisdiction in that partition suit to determine the curtesy issue had it been raised.

7. **Ejectment:** PRACTICE: SEPARATE SUITS FOR SEPARATE LOTS. Distinct actions ought to be brought to recover distinct and separate possessions, though the common landlord is joined as a defendant in the one action against him and his several tenants.

Martin v. Trail.

*Appeal from Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

*R. F. Porter* and *J. D. Shewalter* for appellants.

(1)   The property in controversy having been a reversion in Mary T. Graves, wife of George L. Trail, supported and preceded by the life estate of Elizabeth Graves, which life estate did not terminate during the coverture, there was no such seizin in the wife or husband as entitled the husband to curtesy.   Williams on Real Property [4 Ed.], p. 219; Broom, Leg. Max., p. 190; 4 Kent's Com. [7 Ed.], star p. 29 and 30; Tiedeman, Real Prop. [1 Ed.], p. 108; Washburn, Real Prop. [5 Ed.], p. 183; 1 Bishop, Law of Married Women, 489, 497;   *Watkins v. Thorne*, 11 Ohio St. 367; *Gentry v. Woodson*, 10 Mo. 224; *Tremmel v. Kleibolt*, 75 Mo. 255; *McTigue v. McTigue*, 116 Mo. 139; *Cornwell v. Overton*, 126 Mo. 366; *Cochran v. Thomas*, 131 Mo. 258; *Warren v. Williams*, 25 Mo. App. 22; *Null v. Howell*, 111 Mo. 273; *Payne v. Payne*, 119 Mo. 174; *Ferguson v. Tweedy*, 43 N. Y. 543; *Shores v. Casley*, 8 Allen (Mass.), 425; *Chew v. Commissioners*, 5 Rawle (Pa.), 163; *Hinter v. Edge*, 23 Pa. St. 305; *Stoddard v. Gibbs*, 1 Sumner (U. S.), 263; *Mackey v. Procter,* 12 B. Monroe, 433; *Orfurd v. Benton*, 36 N. H. 395; *Reed v. Reed*, 3 Head (Tenn.), 491; *Malone v. McLaren*, 40 Miss. 161; *Redus v. Hayden*, 43 Miss. 614; *Planters' Bank v. Davis*, 31 Ala. 626; *Baker v. Flournoy*, 58 Ala. 650; *Carpenter v. Garrett*, 75 Va. 129; *Fulton v. Johnson*, 24 W. Va. 95; *Bogy v. Roberts*, 48 Ark. 17; *De Term v. Hill*, 2 P. Wm. 703.   (2)   Defendant Trail did not secure any right in the property in controversy

under the *ex parte* partition proceeding had in 1881, introduced in evidence, nor is there anything in such proceedings to interfere with plaintiffs' right of recovery in this action. *Cochran v. Thomas*, 131 Mo. 258; 2 Black on Judg., sec. 660; *Hart v. Steedman*, 98 Mo. 452; *Flenor v. Driskill*, 97 Ind. 27; *Kenney v. Philipy*, 91 Ind. 511; *Case v. Metzenberg*, 109 Mo. 311; *Lycan v. Miller*, 112 Mo. 548; *Cranshaw v. Greek*, 52 Mo. 98; *Conway v. Spalding*, 51 Mo. 51; *Gwin v. Wagoner*, 116 Mo. 143; *Clemens v. Murphy*, 40 Mo. 122; *State Bank of St. Louis v. Bartle*, 114 Mo. 276; *Throckmorton v. Pence*, 121 Mo. 50; *Packet Co. v. Sickels*, 5 Wall. (U. S.) 580; Weeks on Att'ys [2 Ed.], secs. 120, 121 and 271.

*Wallace & Chiles* and *William Aull* for respondents.

(1) In Missouri no seizin is necessary in the wife to support a tenacy by the curtesy in the husband. *Reaume v. Chambers*, 22 Mo. 36; *Harvey v. Wickham*, 23 Mo. 112; *Stephens v. Hume*, 25 Mo. 349; *McKee v. Cottle*, 6 Mo. App. 416. (2) A judgment in partition can not be attacked collaterally by proceeding in ejectment. Black on Judg., sec. 245; Van Fleet's Coll. Att. on Jud. Proc., sec. 3; *Latrielle v. Dorleque*, 35 Mo. 233; *Brawley v. Ramsey*, 67 Mo. 280; *Childs v. Shannon*, 16 Mo. 331; *McDonald v. Frost*, 99 Mo. 44; *Yeoman v. Younger*, 83 Mo. 424; *Lewis v. Morrow*, 89 Mo. 174; *Martin v. McLean*, 49 Mo. 361; *Waddingham v. Gamble*, 4 Mo. 465; *Bernecker v. Miller*, 44 Mo. 102; *Rolfe v. Timmemeister*, 15 Mo. App. 249; *Rosenheim v. Hartsook*, 90 Mo. 357; *Myers v. McRay*, 114 Mo. 377. (3) A judgment in partition establishes the title to the land which is the subject of the partition, and is final and conclusive upon all parties to the record of such proceedings. *Forder v. Davis*, 38 Mo. 107; *Bobb v.*

*Graham*, 89 Mo. 200; *Holliday v. Lankford*, 87 Mo. 577; *Hart v. Steedman*, 98 Mo. 452; *Akers v. Hobbs*, 105 Mo. 127; *Beckner v. McLinn*, 107 Mo. 277; *Ketch- mar v. Christman*, 128 Mo. 38; *Aull v. Day*, 133 Mo. 337. (4) A judgment in partition procured by the curator of a minor binds such minor to the same extent as if the minor was adult. R. S. 1879, sec. 3346; R. S. 1889, sec. 7139; *Payne v. Masek*, 114 Mo. 631. (5) The partition proceedings and judgment offered in evidence by defendant Trail to prove his title to his life estate were competent both under a general denial and the special plea of title made in his answer. *Carter v. Scaggs*, 38 Mo. 302; *Meyers v. Gale*, 44 Mo. 416; *Davis v. Penler*, 65 Mo. 189. (6) Ejectment does not lie by joint action against several defendants holding inde- pendently and severally. *Sutton v. Casseleggi*, 77 Mo. 408.

MACFARLANE, J.—This is an action of ejectment. The petition is in the usual form. The defendants answer separately. Defendant Trail denies the right of plaintiff to the possession of the land. Two of the other defendants answer separately that each is in possession of a separate part of the land as tenants of defendant Trail. The third disclaims any possession or right to possession.

The judgment was for defendants and plaintiffs prosecute this appeal.

The principal facts are matters of record or stand admitted. They are these: John Graves dies intes- tate prior to December 12, 1853, seized of a large tract of land in Lafayette county. He left surviving him a widow, Elizabeth Graves, and two sons, Thomas R. Graves and David A. Graves. On said day the parties, by deed of partition, divided the land among them- selves. The heirs conveyed to the widow as her dower

a portion of the land to have and hold during her life, with remainder to the grantors and their heirs. The land in controversy is a portion of the dower lands.

The said Thomas Graves died intestate in 1857, leaving one child, Mary T. Graves, who married defendant Trail. The said Mary had one child by the marriage, Mary W. A. D. Trail, who married Joseph Martin. She and her husband are the plaintiffs in this suit. Mrs. Mary Trail, wife of defendant, died about the year 1871, leaving plaintiff as her sole heir at law. The widow of the said John Graves lived on the land conveyed to her as dower until 1881, when she died.

At the August term, 1881, of the circuit court of Lafayette county, plaintiff, then Mary W. A. D. Trail, by her curator, William M. Green, defendant George L. Trail, and the heirs of the said David A. Graves, by their attorney Wm. M. Green, commenced a suit by petition *ex parte* for the partition of the said dower land. In this petition the plaintiffs "state that the interest of said Thomas R. Graves in said lands has thus descended to and invested in plaintiff Mary W. A. D. Trail, subject to the tenancy by the curtesy therein of her father, George L. Trail, being the said interest for and during his natural life. Plaintiffs state that plaintiff Mary W. A. D. Trail is entitled to one half of said lands subject to the life interest therein of her father, George L. Trail." In their prayer for judgment petitioners say: "Plaintiffs desire that partition be made and that one half of said lands be set off to Mary W. A. D. Trail and George L. Trail, to hold according to their respective interests." The petition was heard and the court found that "Mary W. A. D. Trail is entitled to one half of said land subject to the life interest therein of her father George L. Trail." It was thereupon adjudged "that partition of said land be made

between the parties aforesaid according to their respective rights as above declared and ascertained by the court." Commissioners were appointed and were ordered to set off to the said Mary one half the land. They reported among other matters: "We allot and set off to Mary W. A. D. Trail, subject to the life interest therein of her father, the following lands." Then follows a description of the land allotted to the said Mary and her father, which is the land in controversy in this suit. The report was approved by the court, which ordered that "partition and division so made by said commissioners is made firm and effectual forever."

The court, at request of defendant, declared as a matter of law that "on the pleadings in the case and the law of this case and the evidence offered, the plaintiff can not recover, and the court will find for the defendants." The judgment was accordingly for the defendants and plaintiff appealed.

As will be seen from this statement there are two well defined legal questions presented by this record: *First*, the right of the husband to curtesy in a reversion of the wife, dependent upon a life estate; *second*, was the right of the husband to curtesy conclusively adjudicated by the partition proceedings and judgment?

I. The widow of John Graves was in the possession of the land holding an estate therein for her life, and at the termination of the particular estate the wife of defendant Trail was entitled to the reversion. The wife died before the termination of the particular estate. The first question is, whether or not defendant Trail, the husband, under these facts, was entitled to curtesy in the reversion on the termination of the particular estate, or did the fee vest in the heir of the reversioner?

It is not disputed by counsel for defendant that at

common law seizin of the wife during coverture was necessary to entitle the husband to a tenancy by the curtesy upon the death of the wife. Nor do they dispute that at common law an estate by the curtesy only attached to those estates of inheritance of which the wife had actual seizin, a *possessio pedis*, during coverture. But it is insisted that notwithstanding the common law of England, which is of a general nature, has been adopted in Missouri, yet as seizin is not, under the statutes of Missouri, "a controlling element in the title to real estate," as it was at common law, the rule that seizin was necessary to entitle the husband to curtesy in the wife's land, is not applicable under the changed conditions, and should not be applied.

We may state in the first place that we find nothing in the legislation of this State that indicates any intention to abolish the rule of the common law in respect to seizin of the wife during coverture, being a necessary condition to the right of the husband to curtesy. It is true that the title to so much of the land in this country is held by persons who do not occupy it, and the free transfer of title from one to another by deed alone without livery of seizin has made it necessary to change the rule of the common law in respect to the character of seizin required. The changed condition requires nothing more, and the Supreme Court of this State has gone no further than to so modify the rule to the changed conditions as to make a right to the actual possession answer for the necessary seizin. Indeed, the policy of our law, as shown by legislation, has been to restrict rather than enlarge the rights of the husband in the property of the wife, both real and personal. This fact should restrain the courts from removing any one of the conditions upon which the right of curtesy rested at common law further than has already been done in respect to the character of the

required seizin. The cases of this court cited and relied upon by counsel for respondent go no further than to hold that no actual possession of the wife is necessary, as at common law, and the effect of all the decisions is that the wife must be seized during coverture, either in fact or in law.

In *Reaume v. Chambers*, 22 Mo. 54, Judge SCOTT says: "As to the question, whether *actual* seizin of the wife's land is necessary to entitle the husband to curtesy, we are of the opinion that such an idea never prevailed here. Whatever may be the common law on the subject, the circumstances of the country demand a modification of the rule. Titles to land conferred by the United States were supposed to give seizin *in 'deed* to purchasers. Descents with us depend not on actual seizin but on the statutes regulating descents, and we have allowed the conveyance of land whilst in the adverse possession of others." There is nothing in this declaration that imparts the idea that seizin of the wife was not necessary in this State to entitle the husband to curtesy. The court was dealing with the character of the seizin, and held that seizin *in law*, the seizin under which the paramount title draws to and connects with the possession, is sufficient. An examination of the case will show that the wife held the paramount title to the land in question during coverture, and was entitled to, though not in, the actual possession.

In *Harvey v. Wickham*, 23 Mo. 115, it was held, following the *Chambers* case, that "after descent cast no entry or *actual* possession was necessary in order to entitle the husband to curtesy in his wife's land." The same was held in *Stephens v. Hume*, 25 Mo. 349. Seizin of the husband during marriage is still necessary to entitle the wife to dower, though the subject has been dealt with by the legislature, and though the property rights of married women have been greatly en-

larged in other respects.   It is but reasonable to say that if a larger right of the hus band in his wife's land had been deemed desirable the legislature would have provided for it.

In *Gentry v. Woodson*, 10 Mo. 224, which was a dower case, the court says:   "Under the issue of 'non-seizin' there is no doubt but that an actual corporeal seizin or a right to make such seizin in the husband during coverture is essential to entitle the widow to dower."   In *Payne v. Payne*, 119 Mo. 179, it is said:   "Now, seizin of the husband at some time during the marriage is an indispensable prerequisite in order to entitle the widow to dower, and it must be a seizin in  fact  or law. . . . . . . . .  'If, therefore,' says WASHBURN, 'the husband have only a reversion or remainder after a freehold estate in another, though it be a fee, it will not give his wife a right of dower therein, unless by the death of the intermediate freeholder, or by a surrender of his estate to the husband.'   Here the husband had only a reversion after the life estate.  He had no seizin, either in fact or in law, at any time during the marriage.  The seizin during the whole of that time was in the life tenant."   In *Null v. Howell*, 111 Mo. 276, it is said:   "There could be no dower in lands assigned as dower.  The interposition of the life estate of the widow would prevent the necessary seizin of the husband." In dealing with  questions  involving  the  husband's right of curtesy, seizin of the wife is uniformly recognized by this court as being essential.   See *Tremmel v. Kleiboldt*, 75 Mo. 255; *McTigue v. McTigue*, 116 Mo. 138; *Cornwell v. Orton*, 126 Mo. 366.   At common law seizin in deed, that is, actual possession, was necessary. In Missouri the common law has been so modified as to make seizin in law, that is, a present right to possession, sufficient.   But no case in Missouri holds nor are we cited to cases elsewhere, in the absence of stat-

utes, which hold that seizin of one kind or the other by the wife is not a necessary condition to the right of curtesy in the husband. The American rule, as given by the text writers generally, is: "If the estate of the wife be a reversionary one, subject to a prior freehold estate in another, her constructive seizin of such reversion will not entitle her husband to curtesy unless the prior freehold determine during coverture." 1 Wash. Real Prop., p. 183; Tiedeman, Real Prop., sec. 107; 4 Kent, p. 28; Williams, Real Prop. 219; 4 Am. and Eng. Ency. of Law, p. 961.

Counsel for appellant cite us to numerous decisions of the courts of other States which declare the same rule. The rule we think entirely consistent with the changed conditions alluded to by Judge SCOTT in the *Chambers* case, *supra*. There is no question in that case but that the wife had the present right to the possession of the land during coverture. "Seizin in law is a right of immediate possession according to the nature of the estate." Bouvier, Law Dic., p. 625; 1 Wash. Real Prop., p. 62; Tiedeman, Real Prop., sec. 24; *Gentry v. Woodson, supra*. The case of *McKee v. Cottle*, 6 Mo. App. 416, is cited and much relied upon by defendant in support of his position. In that case the ancestor of the wife died intestate siezed of a tract of land, leaving a widow and several children, Sarah Ann being one of them. Sarah Ann married defendant Cottle a few months after her father's death. Two years afterward the land of decedent was partitioned and one hundred and twenty-three acres, the land in controversy, was allotted to the widow. Sarah Ann died in 1862, leaving issue, and the widow died soon after. In a suit for partition of the dower land defendant Cottle, the surviving husband of Sarah Ann, claimed a tenancy by the curtesy in the interest to which the wife would have been entitled had she survived the dowress. The

claim was sustained by the court, as we understand from the argument, on the ground that upon the death of her ancestor the wife of defendant became seized in law of an interest in the land as heir of her father, which seizin continued after the marriage. Therefore, the wife was seized of the land during coverture, and this seizin was not defeated by the subsequent assignment of dower. We need not consider the correctness of the decision, for the case at bar raises no such question. It is evident that the court held that seizin in fact or in law, at some time during coverture, was necessary. In the case before us there never was seizin of the wife of defendant Trail, either in fact or in law, during coverture. Defendant Trail, therefore, had no right to curtesy in the reversion of his wife. On the termination of the life estate the fee vested in plaintiff as the heir of the reversioner. The same conclusion was reached *arguendo* in *Cochran v. Thomas*, 131 Mo. 274, but the *dictum* there made to the effect that actual seizin of the wife was necessary to create curtesy initiate, as applied to the law as recognized in Missouri, is incorrect.

II. Said defendant insists in the next place that his right to curtesy was determined and adjudicated in the partition suit to which plaintiff was a party and the correctness of that judgment can not be questioned in this collateral proceeding.

The question on this branch of the case is whether or not the partition judgment is a bar to this action. If the rights of these parties were adjudicated in the partition proceeding, it will be conclusive on them in this suit, though erroneously decided, and it could make no difference that the proceedings were *ex parte*. Judgments in partition are as conclusive on the parties to the suit on all issues over which the court has jurisdiction and which were thereby determined, as other

judgments, and are no more subject to collateral attack. Whether or not, in proceedings for partition, a question affecting the rights or interests of any party was adjudicated, must be determined as in other cases, considering the peculiar nature and objects of the proceeding and the law specially applicable thereto. There was no extrinsic evidence offered on the trial of this case which tends to prove that the right of defendant Trail to curtesy in the land partitioned was tried and determined. Whether or not it was determined, must therefore be ascertained from the face of the record in that case.

.The primary object in a partition suit is to separate interests into distinct portions of the land to be held by the respective owners in severalty, yet "whenever it shall appear in any proceeding in partition that there are parties claiming the same portions adversely to each other, the court may either decide upon such adverse claims, or in its discretion, direct the share or shares so in controversy to be set off and allotted, subject to the claims of the parties in controversy against each other." R. S. 1889, sec. 7148.

The record in the partition suit was put in evidence on the trial. An inspection of that record fails to show that an issue was distinctly made on the question of the right defendant now asserts. All the parties in interest joined in the petition and the court is asked to determine no conflicting interests. It is manifest that there was, at that time, no controversy between the husband and the heir of the reversioner which they wished to have determined in that suit. This is made more apparent from the fact that the heir and the husband were each represented by the same person. Mr. Green acted as curator for the heir, then only twelve years of age, and attorney for the husband of the reversioner. The statute provides that "the court

shall ascertain from the evidence in case of default, or from the confession of the parties, if they appear . . . . . . . and shall declare the rights, titles and interests of the parties . . . . . . . and determine such rights, and give judgment that partition be made between such of them as shall have any rights therein accordingly." R. S. 1889, sec. 7145. It will be observed that parties are, as in other cases, bound by any confessions made in their pleadings, and if an interest is admitted by a party and the court finds according to the admission, the judgment willl be conclusive on the fact admitted.

The petition charges that "the interest (one half) of Thomas R. Graves has descended to and is vested in plaintiff, Mary W. A. D. Trail, subject to the tenancy by the curtesy of her father George L. Trail, being the interest for and during his natural life." The petition then states that petitioners are *tenants in common* and that Mary W. A. D. Trail is entitled to one half of said land, subject to the life interest therein of her father. The prayer is that the court "ascertain and declare the several respective rights, titles and interests of said parties herein set forth and give judgment accordingly, and to order and direct that one half of said land be set apart to Mary W. A. D. Trail and George L. Trail to hold according to their respective interests." It appears clear to us from all the statements of the petition that the only purpose of the suit was to make a division of the land among the tenants in common and was not intended to determine the respective rights of the father and daughter in the part of the land to be set off to them. There was no request that the respective interests of these parties be ascertained and declared.

The statute authorizes the court in its discretion to set off a share, to which adverse claims are made,

subject to such claims. If that is done in any case there could be no adjudication of the respective claims, whatever may have been the condition of the pleadings. Although, therefore, the statement in the petition be construed to be an admission by Mary W. A. D. Trail that her father George L. Trail was entitled to a life estate in one half of the land, it would have no more force than if it had been made out of court, unless acted upon by the court, and the title was so adjudged. The court ascertained the interests of the parties as follows: "That Mary W. A. D. Trail is entitled to one half of said lands subject to the life interest therein of her father, George L. Trail." Commissioners were appointed and they were ordered to "set apart to said Mary W. A. D. Trail the equal one half of said lands," without mention of the claim of her father, "and to the other parties interested the other half of said lands, to be held by them according to their rights as herein declared." The report of the commissioners shows: "We allot and set off to Mary W. A. D. Trail, subject to the life interest therein of her father, George L. Trail, the following." The land in controversy is then described. The report was approved by the court "and said *partition* and *division* so made by said commissioners was made firm and effectual forever." It is evident that the adverse interests of plaintiff and defendant were never passed upon or adjudicated. While the right of defendant to a life estate seems to have been recognized throughout the proceedings, it was never so declared by the court, but the title was adjudged to be in plaintiff subject to the life interest therein of defendant. The interest was left to be subsequently determined as the statute provides may be done. The language of the statute is followed. One half is set off to plaintiff "subject" to

the interests of defendant. R. S. 1889, sec. 7148; *Lycan v. Miller*, 112 Mo. 548.

The parties to be affected are called "tenants in common." That relation did not exist between plaintiff and defendant. The court was asked to set off one half to plaintiff and defendant "to hold according to their respective interests." The object was not to adjudicate their interests, but to relieve the other half of any claim defendant might make thereto. The court found plaintiff to be entitled to one half subject to the life interest of defendant therein but ordered the commissioners to set off that half to plaintiff. The commissioners did set off one half to plaintiff subject to the interest of defendant, and their action was approved, and as a final and crowning order "the partition and division" was made firm and effectual forever. The judgment following the prayer is for partition only.

No issue was made, no trial was had, and no confession was acted upon by the court, and the rights of those parties were therefore not adjudicated, but were left for future determination.

We are of the opinion that the judgment was not a bar to this action. Reaching this conclusion it is unnecessary to decide whether or not, if an issue had been made, the court would have had jurisdiction, in the partition proceeding, to determine the rights of those parties as between themselves. See *Atkinson v. Brady*, 114 Mo. 200.

III. The evidence tended to prove that the several defendants held distinct portions of the land as tenants of defendant Trail. The defendants pleaded separately their sole possession of such portions. It is held in such case that "distinct actions ought to be brought to recover distinct and separate possessions,"

though the common landlord was joined as a defendant. *Sutton v. Casseleggi,* 77 Mo. 408.

Plaintiff would, however, have the right to dismiss as to any of the defendants at any time before the cause was finally submitted and proceed against the others. The judgment of the court was on the other questions involved, and the issue of separate possessions was not submitted, though there was evidence tending to prove a common possession to the entire tract. Plaintiff had the right to have that question tried, and the court erred in giving a peremptory instruction to find for defendants on that issue.

The judgment is reversed and cause remanded. BARCLAY, C. J., and GANTT, SHERWOOD, BURGESS, ROBINSON, and BRACE, JJ., concur.