Donald R. PENROD, et al.,
Plaintiffs-Appellants-Respondents,

v.

Donald HENRY, Defendant-Respondent.

SKYLINE SUBDIVISION ASSOCIATION, et al.,
Plaintiffs-Respondents-Appellants,

v.

Donald R. PENROD, et al.,
Defendants-Appellants-Respondents.

Nos. 14055, 14061.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 25, 1986.

Harold F. Glass, Tom G. Pyle, Schroff, Glass & Newberry, P.C., Springfield, for plaintiffs-respondents-appellants, Skyline et al.

James K. Justus, Forsyth, for defendants-appellants-respondents, Penrod, et al.

GREENE, Judge.

Donald Penrod, Bernard Harris, Gary Stevens, and Gary Larmon sued Donald Henry seeking a declaration of their respective rights and duties under a contract for sale of, and deed to, certain real estate and a water system located in Skyline Subdivision in Taney County, Missouri. Soon thereafter, Skyline Subdivision Association and its individual members (Skyline) sued Penrod, Harris, Stevens, and Larmon, requesting a similar declaration regarding the same properties, as well as other relief. The circuit court consolidated the two actions for trial.

The trial court's judgment disposing of the two actions declared that legal title to the realty and water system was vested in Skyline. It removed Penrod as the trustee of the property, and ordered Skyline to assume and pay all outstanding obligations of the water system, to reimburse Stevens and Larmon for monies they had personally expended in behalf of the water system, and to pay Penrod for his services as trustee.

Penrod, Harris, Stevens, and Larmon appeal from that portion of the judgment vesting legal title to the property in Skyline. Skyline appeals from that portion of

the judgment awarding trustee's fees to Penrod and reimbursement of expenses to Stevens and Larmon. The two appeals were consolidated here for argument and disposition.

Our review is governed by the dictates of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), which holds that if the trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or application of law, the appellate court should affirm it.

The evidence cast in the light most favorable to the prevailing parties below is that on August 15, 1973, Ronald Haik and others purchased 138 lots in Skyline Subdivision near Branson, Missouri from John Miller. The purchase included a water system located in the subdivision consisting of a well, pump, and some water lines. Haik and his wife later became sole owners of the property, after which Haik added another well, a booster pump, and additional lines to the system. He did not charge lot purchasers a fee to be on the water system, but did charge monthly fees for water usage. In 1980, no longer desiring to manage the water system, Haik suggested to other lot owners that the water system be given to the residents of the subdivision.

A number of the lot owners met, on at least two occasions, and selected five men, Penrod, Harris, Stevens, Larmon, and Don Henry, to act as their representatives, with Henry to act as secretary for the group. An attorney, supposedly representing all parties, prepared a contract for sale and a general warranty deed in order to transfer the property. At the time the sales contract was executed, Haik understood that Penrod, Harris, Henry, Stevens, and Larmon were representatives of all of the people in the subdivision. However, the contract stated the land and water system was being sold to the five men as individuals, with the consideration for the sale being their assumption of existing debts of the water system in the amount of $1,935. Haik also agreed to furnish a general warranty deed and other documents necessary

to carry out the purposes and intent of the agreement. The contract was executed on February 15, 1980. On March 6, 1980, the Haiks signed, as grantors, a warranty deed conveying certain lots, as well as "all easements, pipeline, wells and facilities related thereto." The name of the grantee was left blank, according to Haik, "so they could fill in the name of the corporation," which would eventually operate the water system for the benefit of all the residents of the subdivision, but which was not yet formed.

Don Henry testified that he believed that he and the four named defendants were merely representatives of all the property owners in the subdivision, and that monthly fees they were collecting for water usage would pay the debts the five had assumed. Henry disassociated himself from the other four when they asserted that they owned the water system, and threatened to cut the water lines leading to the individual homes, unless each home owner paid them $2,000.

Stevens, Harris, Penrod, and Larmon then sued Henry, petitioning for a declaratory judgment construing the contract and deed. In the petition, the four asserted that they owned the water system and wanted to sell it, but that Henry did not agree that they were the owners. It also alleged that Penrod was trustee for the five men who were listed as buyers.

In his answer, Henry disputed this, and alleged that Penrod was trustee for all of the property owners of the subdivision who were connected to the water system. He requested that the court declare that the five listed buyers held the property in trust for the benefit of all of the property owners of Skyline.

Skyline and 22 individuals who were members of the association brought suit against Penrod, Stevens, Harris, and Larmon (hereinafter referred to as "defendants"), seeking the same type of relief requested in the first suit, and in addition requesting the removal of Penrod as trustee.

At trial, although defendants claimed the disputed property as their own, the evidence was that none had ever listed the water system as an asset or liability on a tax return, financial statement, or other financial disclosure form in the three and one-half year period between the date of the making of the deed and the time the first suit was filed. Also, Penrod, who was granted a dissolution of marriage on June 2, 1983, did not list the property as an asset in that proceeding.

After hearing, the trial court made findings of fact, conclusions of law, and entered judgment covering the issues in the two cases. The judgment removed Penrod as trustee, vested legal title to the water system and the realty in Skyline, ordered Skyline to pay all outstanding obligations of the water system, including a promissory note with an approximate balance of $2,500, and approximately $900 due to the White River Electric Coop. It also ordered Skyline to reimburse Stevens $70, Larmon $60, and Penrod $1,000 "for his Services as Trustee." In its conclusions of law supporting the judgment, the trial court stated that "[w]hether it be under the theory of an express trust, a resulting trust or a constructive trust, the beneficial owners of the water system and property described in the deed ... were and are" the lot owners in the subdivision, and that Skyline was the appropriate party to hold legal title to the water system and the realty.

In their brief filed here, defendants contend there was no evidence introduced before the trial court to justify a finding of a trust for the benefit of Skyline, on any theory, and that the court "rewrote" the sales contract by construing its terms to create a trust.

■ Absent proof of fraud, accident, mistake, or express contractual provision holding open a condition, none of which were alleged or proved here, the rights of parties to a real estate contract are merged in the subsequent deed. *Estate of Kielhafner*, 639 S.W.2d 115, 117 (Mo.App.1982). We, therefore, construe the deed and not the contract.

■ The grantee designated in the deed was "Donald Penrod, Trustee." These words created a latent ambiguity as they failed to designate beneficiaries of the trusts. In resolving latent ambiguities in deeds, the intent of the parties, primarily that of the grantor, is determinative and dispositive, which intent is determined, not only by the terms of the deed itself, but by the surrounding circumstances and conditions as well. *Snadon v. Gayer*, 566 S.W.2d 483, 489 (Mo.App.1978). Applying this rule to the facts, there was ample evidence for the court to find that Haik intended to grant ownership of the water system and lots to *all* residents of the subdivision using the system, and that the naming of any individual, partnership, other person or legal entity as grantee was for the purpose of creating a trust for the benefit of all the lot owners, and not just for the benefit of the five men whose names appeared as buyers on the sales contract.

Defendants spend a great deal of time in their brief defining and debunking the various theories of express, resulting, and constructive trusts. This is, no doubt, due to the language used in the trial court's conclusions of law which, unfortunately, failed to designate the particular type of trust that the deed created.

The deed recited a consideration of "One Dollar and other valuable consideration," and listed as grantee Donald Penrod. No other document in evidence described the terms of the trust or the identities of the beneficiaries. In *Sanford v. Van Pelt*, 314 Mo. 175, 282 S.W. 1022, 1028 (1926), the supreme court found that a deed similar to the one here created an express trust. The court reasoned "that the word 'trustee' following the name of the grantee in a deed ... evidences the existence of a trust," id., 282 S.W. at 1028, thereby satisfying the statute of frauds and "opening the door to the admission of parol evidence." Id. at 1027. In *Sanford*, however, an objection at trial on the basis of the dead man's statute then in effect prevented the grantor from testifying regarding the terms of

the trust and the identities of the intended beneficiaries. Id. at 1028–29. Therefore, the court held that the lack of competent evidence and resulting uncertainty concerning the objectives of the express trust caused it to fail. Id. at 1029–31. There is no such uncertainty here, as both grantor and grantee under the deed were alive and testified at trial.

 Since the deed, under the authority of *Sanford*, supra, was sufficient to create an express trust, the terms and provisions of that trust could be established by either separate writings or parol evidence. *See also Eisel v. Miller*, 84 F.2d 174, 177 (8th Cir.1936). Using this rationale, an examination of the record indicates there was sufficient competent evidence before the trial court for it to find, as it did, that Penrod held the real estate and personal property in trust for all of the lot owners in Skyline. Its judgment on this issue is supported by competent evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or application of law.

On appeal, Skyline contends that the trial court erred in awarding compensation to Penrod, Larmon and Stevens because 1) the three breached their fiduciary duty by claiming ownership of the water system, and 2) there was no competent evidence to support the award of $1,000 to Penrod.

 By removing Penrod as trustee, the trial court evidently considered that he breached the trust by demanding $2,000 from each lot owner as a condition for continuation of their water service and by claiming he was an owner of the property in question. If a trustee commits a breach of trust, the court may, in its discretion, deny him all compensation or allow a reduced amount. *Sebree v. Rasen*, 349 S.W.2d 865, 890 (Mo.1961).

While Stevens and Larmon testified as to expenses they bore for the benefit of all water users, justifying the amounts awarded them by the trial court, Penrod did not. The summary of Penrod's testimony is that 1) he made no capital contribution to the water system, 2) he had not personally paid any debt of the water system, and 3) while he had spent some small amount for telephone calls and other out-of-pocket expenses, he did not state the amount of such expenditures. Although Penrod did say that he and Don Henry "run and managed" the water system for several years, there was no evidence as to how much time was involved, or the value of those services.

 A trustee has the burden to show that expenditures he made were correct, just, and necessary. *Engelsmann v. Holekamp*, 402 S.W.2d 382, 389 (Mo.1966). Penrod did not do so, while Stevens and Larmon did. Under these circumstances, the award of compensation to Penrod as trustee fees amounted to an abuse of discretion, as there was no competent evidence to support such an award.

That portion of the trial court's judgment removing Penrod as trustee, vesting legal title to the real estate, together with "all easements, pipeline, wells and facilities related thereto," in Skyline, ordering Skyline to assume all outstanding obligations of the water system, and to make membership in the association available to defendants on a basis consistent with the membership requirements for, and fees charged to, existing members of the association, and taxing court costs against defendants, is affirmed. That portion of the judgment ordering Skyline to reimburse Stevens $70 and Larmon $60 is affirmed. That portion of the judgment ordering Skyline to pay Penrod $1,000 for his services as trustee is reversed.

TITUS, P.J., and FLANIGAN, J., concur.