BOATMEN'S NATIONAL BANK OF
ST. LOUIS, Plaintiff–Respondent,

v.

Trevor DANDY, Defendant–Appellant.

No. 57333.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 6, 1990.

William R. Dorsey, Clayton, for defendant-appellant.

Robert M. Susman, Raskas, Ruthmeyer, Pomerantz, Wynne, Garavaglia & Susman, St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from a declaratory judgment in favor of plaintiff and from a judgment in favor of plaintiff on defendant's counterclaim. We affirm.

The underlying transactions are, at a minimum, unusual. Boatmen's obtained, through foreclosure, ownership of property located on McPherson in the City of St. Louis. The previous owner of the property remained on the premises. On April 30, 1987, defendant tendered to Boatmen's a contract for purchase of the McPherson property for a price of $51,000. Boatmen's advised defendant that the price would have to be $53,000 to which amount defendant agreed. The contract of sale was never signed by Boatmen's or as amended, was not signed or initialed by defendant. It contained certain provisions respecting possession of the premises. One of those provisions, a standard form provision, made the deed subject to "leases and to occupancy of tenants existing on the date the contract is executed by purchaser; ..." That provision was included in the contract tendered by defendant. Shortly after receipt of the contract a Boatmen's employee added an additional provision to the contract specifically dealing with the possession of the former owner and placing the obligation to obtain possession upon the purchaser. Defendant denied being aware of that addition. There was evidence that defendant was advised that changes had been made to the contract requiring his initials but he never came by the bank to initial the changes.

Defendant contended that the addition concerning possession was not made until after June 24, 1987. On disputed evidence the trial court found that the addition was made on April 30 and that at no time from April 30th on did Boatmen's promise to deliver the premises to defendant without an occupant.

Despite the absence of a written contract signed by both parties a closing was scheduled for June 24, 1987. Defendant borrowed approximately $37,000 of the purchase price from Boatmen's. On June 24, that loan transaction was closed at a Boatmen's facility in Webster Groves. Defendant executed a note and deed of trust on the McPherson property. These documents and a check for the amount of the loan minus some costs of the loan were transmitted to Missouri Title Company as escrow agent. Defendant delivered to Missouri Title a certified check for the balance of the purchase price and executed additional closing documents at Missouri Title on June 24. Boatmen's, through another facility in St. Louis, executed its special warranty deed for the property naming defendant as grantee, and delivered that deed to Missouri Title on or before June 24.

Approximately one hour after all the papers were delivered to the escrow agent and defendant had left the offices of the agent defendant called the branch manager of the escrow agent. In that call he directed Missouri Title not to record any instruments and not to disburse any money because defendant wanted to talk to Boatmen's about the continued occupation of the premises by the prior owner. Neither the warranty deed nor the deed of trust were ever recorded. In accord with the terms of the note defendant made ten payments of $329.72 each to the bank. In January, 1988, the prior owner vacated the premises. In April 1988, Boatmen's advised defendant of its willingness to complete the closing and record the instruments. Defendant declined. The loan proceeds have been returned to Boatmen's by the escrow agent, and the money deposited by defendant has been returned to him minus certain charges by the escrow agent. Boatmen's brought this action for declaratory judgment. After reciting much of the factual history heretofore set out it stated:

"That although the contract was neither fully executed nor accepted defendant Dandy has demanded that plaintiff perform certain obligations which he purports are set forth therein."

It then sought a declaration that the defendant's claims under the purported contract are not meritorious.

Defendant filed an answer and counterclaim. The answer averred the efficacy of the contract, alleged that defendant had fully performed thereby obviating a defense premised on the statute of frauds and that Boatmen's had breached the contract in failing to deliver possession of the property. The defendant sought a declaration that defendant's "rights" under the contract are meritorious and that he is entitled to damages for Boatmen's breach. The counterclaim sought damages for breach of contract by Boatmen's.

The trial court filed findings of fact and conclusions of law. The court concluded there was no written contract between the parties and that no oral contract existed because there was no agreement as to whether the sale was subject to occupancy by the prior owner. It also concluded that the alleged oral contract would be unenforceable by virtue of the Statute of Frauds, Sec. 432.010, R.S.Mo.1986, and for the same reason promissory estoppel could not form a basis for relief citing *Sales Service, Inc. v. Daewoo Int'l. Corp.*, 770 S.W.2d 453 (Mo.App.1989) [5]. The court also concluded that because defendant had sought only damages for breach of contract that equitable relief such as specific performance or restitution could not be granted.

■ The court's finding that no written contract existed between the parties is clearly correct. There was never a written contract signed by both parties. Nor did defendant seek any type of equitable relief.

■ On the evidence at trial the court's finding that no oral contract existed is supported by the evidence and is not clearly erroneous. That evidence reflected, at most, that the parties never did agree as to who had responsibility for terminating the possession by the prior owner.

■ The warranties covered in a general warranty deed do not encompass a present possession in the grantor which the grantee immediately obtains. *See, e.g., Martin v. Trail*, 142 Mo. 85, 43 S.W. 655, 657–58 (1897) ("Seisin 'in law' is a right to immediate possession according to the nature of the estate"). Actual occupancy or residence upon the property is not a necessary element of possession. *Kunze v. Evans*, 129 Mo. 1, 31 S.W. 114 (Mo.1895) l.c. 115. Removal of the prior owner from a known unauthorized physical presence on the property was not a requirement for the bank to pass valid title to the property under a warranty deed. Sec. 442.070 R.S. Mo.1986; *see State ex rel. Wyandotte Lodge, No. 35, I.O.O.F. v. Evans*, 176 Mo. 310, 75 S.W. 914, 919 l.c. (1903); *cf. Allen v. Kennedy*, 91 Mo. 324, 2 S.W. 142 (1886). If that was to be a condition of the transaction, as defendant contends, it was necessary that it be a part of the contract. There was no meeting of the minds on this material term of the agreement and as a result no contract upon which to base recovery by defendant. *Frensley v. Mills*, 746 S.W.2d 427 (Mo.App.1988) [2, 3].

The parties and the trial court analysed this case on the question of the existence of a contract for the sale of the property. On the basis of that analysis the judgment of the trial court is fully supported by the evidence. In affirming that judgment we do not, however, intend to indicate by implication our approval of the analysis made of this transaction.

■ A contract of sale is not a necessary prerequisite to a valid transfer of title to land. In the absence of such a contract an agreement for such transfer is unenforceable under the Statute of Frauds. But parties are free to make such transfers whether or not they have previously entered into such a contract. The essential elements of a deed are: (1) Names of the parties thereto, (2) words of grant, (3) description of the property, (4) execution and delivery by the grantor and (5) acceptance by the grantee. 1 *Mo. Real Estate Practice*, § 3.7 (Mo Bar 3d ed. 1986). The deed delivered to the escrow agent contained the first three.

■ When a transaction is closed through an escrow agent the agent is charged with the performance of an express trust governed by the escrow agreement with duties to perform for each of the parties which duties neither can forbid

without the consent of the other. *Marvel Industries, Inc. v. Boatmen's Nat. Bank of St. Louis*, 362 Mo. 8, 239 S.W.2d 346 (1957) [3, 4]; *Nash v. Normandy State Bank*, 201 S.W.2d 299 (Mo.1947) [3, 4]. The distinctive feature of an escrow is the delivery of a deed to a third person to await the performance of some condition, whereupon the deed is to be delivered to the grantee and the title is to pass. *Morris v. Davis*, 334 Mo. 411, 66 S.W.2d 883 (1933) [2, 3]. The record here does not establish that any performance was required other than delivery of the deed to the escrow agent and the receipt by the escrow agent of the consideration for that deed. When that consideration was received from defendant the condition of the escrow was performed and the title to the property passed. Neither party was authorized to alter that escrow agreement without the consent of the other. Either party could refuse to perform, but when each had performed delivery and acceptance were complete and the title to the property passed. At that moment any preexisting contract merged into the deed and no longer could form a basis for an action for breach of contract. *Smith v. Old Warson Development Company*, 479 S.W.2d 795 (Mo. banc 1972) [6]; *Hutchens Brothers, Inc. v. Brownsberger*, 624 S.W.2d 538 (Mo.App.1981) [1–4]; *Penrod v. Henry*, 706 S.W.2d 537 (Mo.App. 1986) [1].

The parties have not addressed this question and we do not premise our affirmance on the doctrine of merger. We have before us solely a damage action based upon a breach of contract in which no equitable relief is sought and we have addressed the judgment on that basis. As indicated, however, we do not want this opinion to be construed as a recognition that a unilateral action of one party after performance of the conditions of the escrow agreement can serve to undo a completed transfer of title.

Judgment affirmed.

SATZ and CARL R. GAERTNER, JJ., concur.