THE STATE ex rel. WYANDOTTE LODGE NO. 35 OF THE INDEPENDENT ORDER OF ODD FELLOWS et al. v. EVANS, Judge, et al.

In Banc, June 30, 1903.

1. **Suit to Foreclose Mortgage: LEGAL OR EQUITABLE ACTION.** The suit provided by the statute to foreclose a mortgage is an action at law. But the remedy given by that statute is not exclusive. Courts of equity retain their original jurisdiction and mortgages are still foreclosed through equity jurisprudence.

2. ———: ———: CASE STATED. A lodge, organized for charitable and benevolent purposes in 1857, in order to acquire real estate and to erect a hall in which to hold its meetings, promoted and obtained the incorporation of a stock company, which acquired and held title to the property in dispute for the sole use and benefit of the lodge, the stock company being the trustee and the lodge the *cestui que trust*, but this relation was rendered the more intimate by the lodge owning through three of its trustees all the stock of the company, so that as to the stock the legal title was in these

State ex rel. v. Evans.

three trustees while the equitable title was in the lodge, but as to the real estate the stock company held the legal and the lodge the equitable title. The holder of past due notes executed by the stock company brought suit to foreclose a deed of trust on the lodge hall, and the defense was set up that the stock company's corporate existence had expired by limitation of law in twenty years (in 1877) and two of the lodge's trustees still surviving held the title as trustees for the lodge, and the deed of trust subsequently made by the defunct stock company was not valid. *Held*, that the questions involved could only be determined in a court of equity.

3. ———: ———: JUDGMENT AT LAW. If the pleadings present to the court a suit in equity, its character can not be changed into an action at law by the fact that the decree in one respect took the form of a judgment at law. An equitable action to foreclose a deed of trust is not turned into one at law by the fact that the judgment also takes the form of a judgment *in personam* against the mortgagor, even though that part is erroneous, which in this suit is not the case if the relator's claim be true that the mortgagor is a defunct corporation.

4. ———: EQUITABLE PROCEEDING: APPROVAL OF SALE: APPEAL: PROHIBITION. In an equitable proceeding to foreclose a deed of trust the court has jurisdiction to decree that the sale under execution and the sheriff's deed shall pass title to the purchaser and that he shall be let into possession, and if the court so decreed before the sale is made and before the sale is confirmed, it is at most only such error as may be corrected on appeal, and hence is not such error as will authorize the Supreme Court to prohibit the circuit court from issuing a writ of assistance to put the purchaser into possession.

5. - ——: ———: ——— WHAT AMOUNTS TO CONFIRMATION. Where the purchaser at the sale of the sheriff, who was by the court's decree directed to sell the mortgaged property and pass title, after receiving his deed, exhibiting it to the parties in possession and demanding to be let into possession, but, being refused, applies to the court for a writ of assistance, and all the parties are present to be heard, a judgment by the court awarding the writ, is a confirmation of the sale, if, indeed, any confirmation was necessary.

6. ———: ———: WRITS OF ASSISTANCE. Courts of equity in the exercise of their jurisdiction in the foreclosure of mortgages have power to issue writs to put the purchaser into possession of the property sold. This authority is given them by statute (sec. 1598, R. S. 1899).

## Prohibition.

WRIT DENIED.

*H. F. Wieman, B. F. Pursel* and *Porterfield, Sawyer & Conrad* for relators.

(1) Assuming that the proceedings are in equity (which relators deny) to foreclose a mortgage or deed of trust, the sale of the property made therein must be confirmed by the court. (2) The purchaser of property at a sale thereof made in a proceeding to foreclose a mortgage or deed of trust in a court of equity is not entitled to a writ of assistance or possession to put him in possession of the same, prior to the confirmation of said sale by the court. (3) The foreclosure proceedings in question are not proceedings in equity, but are under the statutes and at law. (4) The statutes authorizing the foreclosure of mortgages and deeds of trust make no provision for a judgment for possession, and that part of the decree of foreclosure in question granting the same is null and void. (5) The purchaser of property at a sale made by the sheriff in a proceeding to foreclose a mortgage or deed of trust under the statutes is not entitled to a writ of assistance or possession in that no provision therefor is made by the statutes. (6) A writ of prohibition is a proper remedy when the action of the circuit court exhibits evidences of excess of jurisdiction as well as when exhibiting absolute absence of jurisdiction. Prior to a discussion of the propositions set out above, it may not be amiss to briefly consider the nature of a writ of assistance or possession. Writs to obtain possession of property are often loosely referred to as writs of restitution, possession or assistance, without regard to the nature of the writ. Correctly speaking, these writs are separate and distinct. The object of a writ of restitution is to restore to a party the specific thing, or its equivalent, of which he has been deprived by the enforcement of a judgment; the object of a writ of possession is to give to one entitled thereto the actual possession of that which has been recovered in an action. Originally a writ

of possession was used only in the common-law action of ejectment. Later, however, it has been used in a limited sense in proceedings in equity, but not in such proceedings to foreclose mortgages or deeds of trust where, as has been pleaded by respondents, the almost universal writs used are writs of assistance. Therefore, bearing this fact in mind, and in view of the frequency with which these writs are designated as writs of assistance or possession without making any distinction between them, and in view of' the fact that both terms are used in the pleadings in this court, we take it that it was not the intention of respondents to use said terms in their technical sense, and the writ which it was intended to obtain and which the court intended to grant, was a writ of assistance, and we shall so treat the same, though so far as the issues here involved are concerned it matters not by what name the particular writ in question is denominated. If a writ of assistance should not have issued much more manifestly should a writ of possession not issue. 16 Ency. Pl. and Pr., p. 744; vol. 18, p. 870. But what is a writ of assistance? It is "the ordinary process used by a court of chancery to put a party, receiver, sequestrator or other person in possession of property when he is entitled thereto, either upon a decree or upon an interlocutory order. The most familiar instance of its use is where land has been sold under a decree foreclosing a mortgage; but it is also employed wherever a court of equity, having jurisdiction of the person and property in controversy, has determined the rights of the litigants to the title or possession of its real estate." 2 Ency. Pl. and Pr., p. 975; Jones v. Hooper, 50 Miss. 510; Root v. Woolworth, 150 U. S. 401. Wherefore it appears that writs of assistance are peculiar to courts of chancery and their most familiar use is under decrees foreclosing mortgages and deeds of trust.

*Warner, Dean, McLeod & Holden* for respondents.

(1)   The proceeding in the Jackson Circuit Court, wherein the decree of foreclosure was rendered, was a suit in equity.   Brim v. Fleming, 135 Mo. 597; Hannah v. Davis, 112 Mo. 599; Weary v. Wittmer, 77 Mo. App. 546; Riley v. McCord, 24 Mo. 265; McClurg v. Phillips, 49 Mo. 315; Wolff v. Ward, 104 Mo. 127.   (2) Writs of assistance are and have always been recognized as inherent in the jurisdiction and power of courts of equity in the foreclosure of mortgages as well as in other proceedings in equity relating to the title and possession of real property.   Such writs are not only not unknown in the jurisdiction of this State, but are in fact expressly recognized by statutes and decisions.   R. S. 1889, sec. 1598; Jones on Mort. (4 Ed.), sec. 1663; 11 Ency. Pl. and Pr., pp. 975, 978; Beach, Mod. Eq. Pr., sec. 897; Wiltsie on Mort. Forc., sec. 593; Root v. Woolworth, 15 U. S. 411; Montgomery v. Tutt, 11 Cal. 190; Kershaw v. Thompson, 4 Johns. Ch. 610; Woodsworth v. Tanner, 94 Mo. 128; Henderson v. Dickey, 50 Mo. 161; Baker v. St. Louis, 7 Mo. App. 429, 75 Mo. 671; Motz v. Henry, 54 Pac. 796; Watkins v. Jerman, 36 Kan. 464; 8 Am. and Eng. Ency. Law (1 Ed.), p. 273. (3)   What has been said heretofore, it must be noted, has reference to the equity jurisdiction.   The question of procedure is another matter.   Hannah v. Davis, 112 Mo. 608; State ex rel. v. Johnson, 132 Mo. 108.   Numerous other authorities might be cited from the courts in this State to the same effect, but there can be no question to the proposition that since the adoption of the code there has been in this State but one form of action for the enforcement or protection of private rights and redress or prevention of private wrongs, which shall be denominated a civil action.   R. S. 1899, sec. 539.   Therefore, in matters of procedure, whether the proceeding is an action at law or a suit in equity, the code and the statutes so far as they touch upon the mat-

ter or contain enactments governing the procedure expressly or by intent, must be followed. (4) The sale was in fact confirmed by order of court. Agan v. Shannon, 103 Mo. 666; Jones v. Manly, 58 Mo. 559; Grayson v. Weddle, 63 Mo. 538. (5) No showing has been made or can be made of an excess of jurisdiction to justify the issuance of a writ of prohibition. Under the authorities cited, the issuance of a writ of assistance was within the jurisdiction of the lower court. All parties· have had a hearing upon two occasions and for any errors of law or fact appeal or writ of error are the only remedies. Having prima facie jurisdiction below, this court will not correct a mistaken exercise of it, even if it should now think any such mistake had been committed. State ex rel. v. Valliant, 100 Mo. 61; State ex rel. v. Withrow, 141 Mo. 80; Coleman v. Dalton, 71 Mo. App. 24.

VALLIANT, J.—This is an original proceeding by which the relator seeks a writ to prohibit a judge of the circuit court in Jackson county issuing a writ of assistance to put the purchaser into possession of certain real estate which was sold under a decree of that court in a suit to foreclose a deed of trust.

The application for the writ of prohibition is based on two propositions: first, that the suit in which the foreclosure judgment was rendered was an action at law in which relator says no writ of assistance can issue; second, if relator is mistaken in the nature of that suit and it is to be adjudged a suit in equity, then it says the court has exceeded its jurisdiction in ordering the writ of assistance because there had been no confirmation of the sale which was essential to the passing of the title.

I. We have a statutory proceeding to foreclose a mortgage which has been adjudged to be an action at law. Section 4342, Revised Statutes 1899, provides that a mortgagee may file his petition in the circuit court

against the mortgagor and those in possession of the property "setting forth the substance of the mortgage deed, and praying that judgment may be rendered for the debt or damages, and that the equity of redemption may be foreclosed, and the mortgaged property sold to satisfy the amount." In that brief quotation is defined the entire scope of the petition contemplated in the proceeding there authorized. The judgment to be entered in such a suit, if plaintiff is successful, is prescribed in sections 4350 and 4351 following, which is, if the mortgagor has not been summoned or does not appear, that the plaintiff "recover the debt and damages, or damages, found to be due, and costs, to be levied of the mortgaged property," and if the mortgagor has been summoned or appears, the judgment in addition to the above is to be "that if the mortgaged property is not sufficient to satisfy said debt and damages, or damages and costs, then the residue to be levied of other goods and chattels, lands and tenements of said mortgagor."

That is the statutory proceeding which this court from the beginning has decided to be an action at law as distinguished from a suit in equity. [Thayer v. Campbell, 9 Mo. 281; Riley v. McCord, 24 Mo. 265; Fithian v. Monks, 43 Mo. 502; Pemberton v. Johnson, 46 Mo. 342.] The proceeding there contemplated deals with no uncertain parties and no equivocal titles. The parties are the mortgagee on the one side and the mortgagor and the man in possession on the other; the one holding the legal title with a defeasance, the other holding the equity of redemption and the possession; the only duties of the court are to ascertain the amount due on the mortgage debt and pass judgment that the property be sold for the amount so ascertained and that execution issue for the balance, if any, against the mortgagor's other property. When that is all there is of substance in a case it is a suit at law, even though the petition denominate it a suit in equity and states the

case in language more appropriate to bills in equity. [Riley v. McCord, 24 Mo. 265.]

But the remedy given by that statute is not exclusive. Courts of equity retain their original jurisdiction and mortgages are still foreclosed through equity jurisprudence. [McClurg v. Phillips, 49 Mo. 315; Hanna v. Davis, 112 Mo. 599; Brim v. Fleming, 135 Mo. 597.] If a case which involves, among other things, the foreclosure of a mortgage must for that reason be limited to the proceeding given in the statute, that proceeding would often be found to be inadequate, because, while under its forms the amount of the debt can be ascertained and the equity of redemption be ordered to be sold to pay it and execution against the mortgagor awarded for the balance, if any, yet there may be other complications involved which only a court of equity can adjust. [Wolff v. Ward, 104 Mo. 127.] In our code of civil procedure we start out by saying that there shall be but one form of action for the enforcement or protection of private rights which is to be called a civil action (section 539, R. S. 1899), yet we do not say, and it would be futile to say, that we no longer observe the fundamental distinctions that exist between causes that are to be adjudged according to principles of equity and those that are to be measured by the rules of law. And whilst we submit all causes to the judgment of one court of the highest original jurisdiction, yet, in order to render that court competent to fulfill its duty, we have been compelled to clothe its presiding officer not only with the attributes of a law judge, but also with those of a chancellor. Under our judicial system, the distinction between law and equity is as clearly observed as it is under the systems in vogue in those States in which separate courts are held for the disposal of equity causes.

Whether a cause arising in the circuit court is to be judged to be an action at law or a suit in equity must depend on the facts of the case, and although the form

of the pleadings and of the judgment or decree may have some influence, yet the substance of the controversy must control the decision of the question. If the pleader in his petition, or the court in its decree, has through misconception of the nature of the cause added something inconsistent with its true nature, such may or may not, according to its bearing on the case, render the proceeding erroneous, but it will not change its character in respect to the question as to its being an action at law or a suit in equity.

To determine, therefore, whether the foreclosure suit with which we have now to deal was a suit in equity or a proceeding under the statutes, let us first look at the pleadings. According to the petition the facts of the case are as follows: The plaintiff is the holder of past due notes, and a deed of trust to secure them, which were executed in 1892 by the Wyandotte Hall Joint Stock Company (which will hereinafter be called the Stock Company) which was chartered by a special act of the General Assembly in 1857. Wyandotte Lodge No. 35 of the Independent Order of Odd Fellows (which will hereafter be called the Lodge) is and was in 1857 and had been long prior to that date a voluntary association for charitable and benevolent purposes. The Lodge consisted of about 125 members, and under its constitution and by-laws James O. McKeehan, L. B. Austin, and Samuel M. Taylor, who are defendants in the suit, are the trustees to own, hold and manage all the property of the Lodge. In 1857 the Lodge, being desirous of acquiring real estate and erecting a house or hall in which to hold its meetings, and being unable in itself to raise the required capital, in order to obtain outside financial assistance, promoted and obtained the incorporation of the Stock Company. It was provided in the charter that the trustees of the Lodge were to have the privilege of purchasing the stock of the Stock Company, and acting on that right they did purchase and have since held and now hold all the stock of the

corporation for the use of the Lodge.  In 1892 the
Lodge, being desirous of erecting a new building for
its use, by resolution authorized the Stock Com-
pany to borrow $25,000 for that purpose, and to secure
the same by deed of trust on the land described in the
petition, the title to which was then held by the cor-
poration for the use of the Lodge.  In accordance with
that direction the corporation borrowed that amount
of money from one Snyder, and to secure the same
executed its notes and the deed of trust in question.
The plaintiff before the maturity of the notes purchased
the same for value.  The money so borrowed was used
in erecting a building on the land and the same has
ever since been in the possession and use of the Lodge
and the trustees thereof.  The terms of the deed of
trust which include á power of sale are set out in the
petition, but it is unnecessary to repeat them here.

At the date of filing the suit the principal note and
some of the interest notes were due and unpaid and
other breaches of the conditions of the deed had oc-
curred.  The insolvency of the corporation, the depre-
ciation of the property in value, its insufficiency to pay
the debt, its mismanagement, and misappropriation of
the rents by the defendants, are alleged in the petition
as reasons why the court should appoint a receiver.  It
is also alleged that the individual defendants, the trus-
tees, and the officers of the corporation have denied the
validity of the plaintiff's security on the ground that
the alleged corporation which was chartered in 1857 had
expired by limitation in 1877 under the provision of
the general statute limiting the life of corporations to
twenty years, and was not in legal existence in 1892
when the notes and deed of trust were executed.  But
the petition says that in fact, whatever the law on the
point may be, the stockholders and officers of the cor-
poration kept up the organization by annual election
of officers and transaction of business, treating
it as a live concern, holding it out as such,

and on the faith of such display of life bor-
rowed the money and erected the building on the lot
and that they are now estopped to deny the validity of
the act. The Stock Company, McKeehan, Austin, and
Taylor as trustees of the Lodge, and Mr. Dean, the
trustee in the deed of trust, are made parties defendant.
The prayer of the petition is that the amount of the
plaintiff's debt be ascertained, that it may have judg-
ment for the amount against the defendants other than
the trustee in the deed of trust, that the deed be declared
a valid and first lien on the real estate, that the prop-
erty be so sold to satisfy the debt; that defendants' equity
of redemption therein be thereby foreclosed; that in the
meantime a receiver be appointed to take possession
of the property, to collect the rents and preserve the
same to the end that they be used to protect the prop-
erty from taxes, etc., and finally applied towards pay-
ment of the debt, and for general relief.

The return of the sheriff on the summons is not
in the record before us, but we infer from what does
appear that the service as to the Stock Company was
on Mr. Porterfield as its president. Mr. Porterfield in
his own name was allowed to file what in the proceed-
ings is called a plea, which was to the effect that the
Stock Company, having been incorporated in 1857,
ceased to exist as a corporation in 1877, by force of the
twenty years' limitation; that at the date of the deed
of trust in question it had no corporate existence and
its alleged acts were null and void.

The individual defendants who are sued as trustees
of the Lodge filed an elaborate answer in which they
made a specific denial of each material allegation in
the petition including that of their own alleged title in
the property, and averred that the Stock Company had
ceased to be a corporation in 1877 having expired by
limitation, that of the last board of directors two were
yet living, that the title to the property owned by the
corporation at the date of the expiration of the charter

passed to the individuals composing the then board of directors as trustees and is now held by the two surviving members, whose names, however, the answer does not state, nor does it state that they are unknown to the defendants answering. The plaintiff came back with a reply which was to the effect that under the circumstances already stated the defendants were estopped to deny the corporate existence of the Stock Company or the validity of the deed of trust.

In the foregoing summary we have not given the full statements that are set forth in the pleadings as might be necessary if the record in that case were now before us for review on appeal, but only sufficient to show the nature of the suit and the character of the issues of law and of fact that the court had for trial.

The cause was tried by the court upon the pleadings and proofs adduced and there was a finding of all the issues for the plaintiff. On the question of the corporate existence of the stock company at the date of the deed of trust, the court makes a special finding to the effect that from the date of the act of incorporation down to and including that of the execution of the notes and deed of trust, the concern continued to act as a corporation holding regular elections and in all respects behaving as if it were a legal entity, and that the defendants, the trustees of the Lodge, owned all the stock for the use of the Lodge; and that the Lodge had by a resolution directed its trustees as such stockholders to obtain the loan in question through means of the corporation; that the money was obtained by this means and used for the erection of the building in the name of the Stock Company and had been ever since its erection in the use of the defendants and that therefore they were estopped to deny the corporate existence of the Stock Company.

The court found that there was due on the notes $38,085.26, for which sum and interest it rendered judg-

Vol 176 mo—21

ment against the Stock Company, and decreed that the deed of trust to secure that debt was a first lien on the real estate in question; that the same be sold by the sheriff·of the county "in the same manner as lands are sold under the laws of this State under ordinary executions for the sale of real estate, and that upon such sale and the payment to the sheriff of the purchase price thereof, the said sheriff shall execute and deliver to the purchaser a good and sufficient deed of conveyance of said land and improvements which shall vest in said purchaser the title thereto free and clear of all claims, rights or demands of the defendants and each of them and all persons in privity with or claiming by, through or under them, or any of them, and that the title of such purchaser to said land and improvements be and the same is hereby quieted, confirmed and established against all of said defendants and all persons claiming or to claim by, through or under them or any of them; and it is further ordered, adjudged and decreed that the defendants and all such persons above referred to, be and they are hereby barred and foreclosed of all equity of redemption or claim in and to said land and improvements and any and every part thereof. It is further ordered, adjudged and decreed by the court that the purchaser of said land and improvements at said sale be let into possession thereof and to every part thereof, and that defendants and each of them who may be in possession thereof or any part thereof and any and all persons who since the commencement of this suit have come into possession thereof, or any part thereof, deliver possession to such purchaser upon the production to them of the sheriff's deed therefor and in default thereof that a writ of possession issue out of this court to put such purchaser into possession according to law." Then follows direction to the sheriff as to the appropriation of the proceeds of the sale, first to the costs, then to the debt and the surplus to the Stock Company. The decree concluded with a judgment for

costs against the Stock Company and an award of execution to enforce the decree in all its parts.

There was an appeal taken by the defendants which is now pending, but as there was no supersedeas, execution issued, a sale occurred at which the respondent Alsop became the purchaser, received the sheriff's deed which he exhibited to the defendants and their tenants, and demanded possession which they refused. Then he applied to the court which rendered the judgment for a writ of assistance to put him in possession. Notice of this application was duly given to the defendants and their tenants and also to the Lodge which entered a special appearance and filed an answer in which it claimed to be a corporation and the sole owner in possession of the property and contested the right of Alsop to the writ asked for and the jurisdiction of the court to issue it. The trustees, Austin and Taylor, answered, as did also some of the tenants, all contesting the right of the purchaser to the writ and the authority of the court to issue it. The application came on for hearing upon the petition by the purchaser, the answers, or returns, of the parties, and the proofs adduced on the issues of fact raised. There was a finding for the petitioner on the facts and the court awarded a writ to put him in possession. There is no necessity, for the purpose of our present inquiry, to set out here the details of the order, its conditions, limitations, etc. The general purport of the order was that, as against the Lodge the trustees and their tenants, the purchaser at the sheriff's sale was to have possession of the property. Upon the entering of that order the Lodge filed its petition for the writ of prohibition we are now asked to issue.

The foregoing epitome is sufficient to show that there were questions in the case of such a nature as could not be settled in a tribunal proceeding within the limits that circumscribe a court in the trial of an ordinary law suit, questions of a character certainly different from those which were in the minds of the law-

makers when they enacted our statute above quoted providing for the foreclosure of a mortgage, questions of the very character which rendered the establishment of courts of equity jurisdiction a necessity in the administration of justice.

If the relator's idea in reference to the expiration of the life of the corporation is correct, then the court had to deal with a title in the clouds, with no one tangible by the process of the court except those having only the equitable interest, those for whose use the property was acquired. If the statements in the petition are true, the Stock Company acquired and held the title to the property for the sole use and benefit of the Lodge; the Stock Company was the trustee and the Lodge the *cestui que trust;* the Stock Company held the legal and the Lodge the equitable title. This relation was rendered the more intimate by the Lodge owning though its trustees all the stock in the Stock Company, so that, as to the stock the legal title was in the trustees while the equitable title was in the Lodge. It is said in the answer of the trustees that two of the members of the board of directors, who were such in 1877, when the life of the corporation expired, are still alive, that the legal title to the property passed to them on the demise of the corporation and is now held by them. The issue on that point is not sufficiently tendered, because the names of the alleged surviving directors are not given. The court could not find for the defendants on that issue unless it could locate the title, and that it could not do unless it was informed of the individuals who held it. If, therefore, it is true that the corporation, at the date of the deed of trust, was dead, we have a case (if the statements in the petition are true) in which the trustee is dead but the *cestui que trust* has assumed management of the property, has put forward certain persons professing to represent the trustee, has induced confidence to be placed in them as such, has obtained a large amount of money through that means, and now denies

the validity of their act and deed on the ground that they had no legal authority to do as they did. In a court which deals with strict rules of law alone, the position could perhaps be sustained, but a court of equity can adjust the rights of the parties on broader principles. In such case if the legal title has dissolved or become intangible, a court of equity alone can reconstruct it out of the equitable interests that remain.

We have not intended by anything that is here said to express or intimate any opinion on the merits of the controversy, but only to indicate the nature of the controversy so that we can judge whether it is a suit in equity or an action at law. It is a suit in equity.

II. On one point the decree takes the form of a judgment *in personam* against the stock company, and this is considered by relator as showing conclusively that the proceeding is an action at law. If the pleadings presented to the court a suit in equity its character would not be changed because the decree, erroneously it may be, in one respect took the form of a judgment at law. If the court, under the pleadings, had no jurisdiction to enter a personal judgment, that much of the decree would be void, but the rest of it is not dependent on it. And if there was in this case in that particular an excess of jurisdiction, it was on a point that in no manner affected the relator. If what the relator now says about the stock company is true, a judgment against it amounts to nothing, and at all events relator has no cause to complain of it.

III. Relator's next proposition is that, if it is a suit in equity, then title to the property did not pass by the sale and sheriff's deed, but is held in suspense until the sale shall be confirmed by the court.

The usual course of procedure in courts of chancery in such case was for the officer or special commissioner, who was ordered by the decree to make the sale, to report his act to the court and await its further order; then if the act was confirmed he would make the deed,

and then the court, if it deemed it right to do so, would order a writ to issue to put the purchaser into possession. In the case at bar the court by its decree ordered the sheriff to sell the property as in case of ordinary sales of land under executions, to execute a deed to the purchaser, receive from him the purchase money and pay it out in a certain way. The decree also declared that the title to the property should pass to and vest in the purchaser and that he, on conditions therein named, should be let into possession. In these particulars the decree did not follow the ancient chancery practice but passed judgment on points that under that practice would not have been adjudged until the coming in of the report of the officer or commissioner. Upon the part of respondent it is argued that whilst equity jurisdiction is preserved in our courts, yet as to procedure our code of procedure applies, where it can apply, as well to equity as to law cases. We will not decide that question now, nor intimate any opinion on it, because it is not necessary for the purpose of this application to do so, and because to decide it now might be to anticipate the decision on that point when the case comes before us, for review on appeal. If the decree ought to have followed, in the respect complained of, more closely the ancient chancery procedure, the most that can be said against it is that in that respect it was erroneous, but that would not be the same as saying that the court exceeded its jurisdiction. The court has said in its decree that the sale and sheriff's deed should pass the title to the purchaser and that he should be let into possession. The court was dealing with a subject over which it had jurisdiction and the decree is valid and binding until, if ever, it is reversed on appeal.

It appears that after the sale by the sheriff and the delivery by him of the deed to the purchaser, the latter went with his deed to the parties in possession and demanded to be let into possession as the decree required, but they refused and then the purchaser applied to the

court for the writ of assistance.  In the hearing of that application; the relator, with others interested, was present and participated.  All the facts necessary to show that the purchaser was entitled to have that provision of the decree relating to putting him in possession were shown to the court, and all that the relator and others desired to show to the contrary was shown, and after a full hearing the court decided that the purchaser was entitled to the writ and so ordered.  If a confirmation of the sale was necessary the judgment of the court on that application was a confirmation.  [Jones v. Manly, 58 Mo. 559; Grayson v. Weddle, 63 Mo. 538.]

That courts of equity in the exercise of their jurisdiction in the foreclosure of mortgages have the power to issue writs to put the purchasers into possession of the property sold, is a proposition well established. [Jones on Mort. (4 Ed.), sec. 1663; 2 Ency. Pl. and Pr., 975, 978; Wiltsie on Mort. For., sec. 593; Root v. Woolworth, 150 U. S. 411; Kershaw v. Thompson, 4 John. Ch. *p. 610; Woodsworth v. Tanner, 94 Mo. 124, l. c. 128.]

Under the ancient chancery proceeding it is called a writ of assistance and there is no objection to that name in our.practice.  Our statute gives to our courts express authority to issue all writs necessary in the exercise of their jurisdictions.  [Sec. 1598, R. S. 1899.] ·

Nothing we have said in this opinion is intended as passing judgment on any points in the decree or the proceedings which the parties appealing therefrom conceive to be error, but we have viewed the case only from the standpoint of relator who has challenged the validity of the action of the court in awarding a writ of assistance upon the ground that the court in awarding the writ exceeded its jurisdiction.  We hold that the court had jurisdiction to issue the writ, and that it was in duty bound to do so if in its own judgment the right and justice of the case demanded it.

The writ of prohibition is denied.  All concur, except *Burgess, J.,* who dissents.