EVERETT v. MANSFIELD. In re PEASLEY. Ex parte EVERETT.

(Circuit Court of Appeals, First Circuit. October 31, 1906.)

No. 642.

VENDOR AND PURCHASER—BREACH OF CONTRACT BY VENDOR—LIEN OF PURCHASER FOR INTEREST.

Where a vendor has failed to make title as required by his contract for a sale of land, the purchaser is in equity entitled to recover interest on any advances made on the purchase money, whether with a stakeholder or paid to the vendor, and is also entitled to a lien on the land for the amount of such deposits and the interest; and these rules apply in bankruptcy proceedings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 985.]

For opinion below, see 137 Fed. 190.

John Everett, for appellant.

Jesse M. Barton (Alfred L. Mansfield, on brief), for appellee.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. In this case Everett, the appellant, made a bargain for the purchase of real estate from Peasley, the bankrupt, whose trustee in bankruptcy is Mansfield, the appellee. It is well to put the case in that form, although the contract for the purchase of the property was made by one Bradshaw, and assigned by him to Everett. The terms of the purchase were $200 down, $1,000 in the course of a few days, and the balance, namely, $3,400, "upon the delivery to said Bradshaw by said Peasley of a deed conveying a good title to the said Bradshaw of the real estate in question." It was stipulated that Peasley was to have 30 days in which to furnish the deed. The payments of $200 and $1,000 were duly made to Peasley. The $3,400, according to the contract, was deposited in the hands of a stakeholder.

Peasley did not make a good title within the 30 days, and the case states that a satisfactory deed was never furnished by him. Some litigation grew out of the transaction, and pending that litigation Peasley went into bankruptcy. Thereupon the litigation was dismissed, and Everett, as the assignee of Bradshaw, claimed repayment of the $3,100, which was ordered, and also a lien on the real estate or its proceeds for the repayment of the two sums, $200 and $1,000, which lien was established by the court in bankruptcy, and that money has been received. The court also allowed a lien for the interest on the two items of $200 and $1,000; but, Everett having petitioned for interest on the $3,400 and a lien therefor, the petition was denied, and Everett appealed to us. The only possible suggestion for a distinction between interest on the $1,200 and on the $3,400 is that the former was paid to the bankrupt as purchase money, while the $3,400 was deposited with a stakeholder. Of course, the agreed period during which a deposit may lie idle may, perhaps, be regarded as days of grace, and therefore exceptional, provided the deposit is returned before it expires.

By Lord Cairn's Act certain questions touching this topic were settled by statute in England, but none of the authorities which we cite are colored by that fact. The case relates only to liquidated amounts; that is, the amounts paid on the purchase money or deposited with the stakeholder. It has no relation to unliquidated damages, such as the difference between the value of property bargained for and the bargained price, which unliquidated damages, although the same may be allowed on a bill to cancel a contract for the default of the vendor, may not be protected by a lien. Cornwall v. Henson (1900) 2 Ch. 298, 305. The text-writers and cases speak of a deposit. Williams on Vendor & Purchaser (1906) 22, says that in London the deposit is usually put into the hands of the auctioneer, but at country sales into the hands of the vendor's solicitor, adding that, when the deposit is paid to an auctioneer, he receives it as a stakeholder. Strictly speaking, a deposit is not a payment to the vendor, and therefore is a fund put into the hands of the auctioneer or some other stakeholder, as in the present case. Nevertheless, in the English authorities the word "deposit" covers advanced payments to the vendor. It must also be borne in mind that, under some circumstances, the purchaser pays interest on the balance of the purchase money; and the greater portion of the discussion about interest in the English authorities is with reference to that fact. It is necessary that their discussion of the two classes of interest should not be confused.

The general rule applicable to this case as stated in Fry on Specific Performance (4th Eng. Ed. 1903) 621, 622, as follows:

"This lien in the case of a purchaser extends to all installments of the purchase money, interest thereon at 4 per cent. per annum, sums paid under the contract as interest on the unpaid purchase-money, interest thereon, and the costs of an unsuccessful action by the vendor against the purchaser."

The general rule is also stated in Dart's Vendors & Purchasers (7th Eng. Ed. 1905), as follows:

In case of default on the part of the vendor, "the purchaser, if he have paid all or any part of the purchase money, will have a lien for it, with interest,

on the land and title deeds, even though he may have taken an independent security, and also have his costs of suit."

The rule in regard to the lien in question is also declared in general terms by Sugden on Vendors (Perkins' 8th Am. Ed.) 671.

The right to the lien was first clearly stated in 1855 in Wythes v. Lee, 3 Drewry, 396, by Vice Chancellor Kindersley, although the principles which establish it, as said there and subsequently elsewhere, are old in the equity law. They were fully stated in 1864 in Rose v. Watson, 10 H. L. C. 672, 678, 682, 684. They are based on the well-known fundamental rule that in equity what is agreed to be done is regarded as done; so that, from the time that a contract is made for the purchase of real estate, the vendor is often held as, in a certain sense, a trustee for the purchaser, and the purchaser is regarded, in a certain sense, as the real owner of the land, so that each, on the ordinary equitable rules, has a lien for his protection. The whole practice in equity with reference to such contracts is clearly on the basis that the parties are under mutual equitable obligations to each other, so that either one party or the other should receive interest on his money as against the rents and profits, which are also, under certain circumstances, to be accounted for.

Wherever the question of interest on a deposit is raised in these authorities, interest is said to be allowed, and a lien given for it. Nowhere in any text-book or case that we have found is any distinction made between strictly a deposit in the hands of the auctioneer, or other stakeholder, and a deposit made in the form of an advance payment to the vendor. On the other hand, the extent to which equitable rules apply to this matter of interest appears from some cases and authorities in which a question of lien did not arise. For example, in Lord Anson v. Hodges, 5 Sim. 227, 228, decided by Vice Chancellor Shadwell in 1832, it was said that the vendor had failed to make good his representations as to the property, "and therefore justice would not be done to the defendant"—that is, the purchaser—"unless he was allowed interest on his deposit." The rule stated here, it will be seen, is the mere rule of justice. In Sugden on Vendors (edition already cited) 640, referring to an action at law, it is said that where the purchaser recovers a deposit only from the auctioneer, in this case the stakeholder, he may in an action against the seller recover interest on it. Further, Sugden, at the same page (640), says: "If a vendor cannot make a good title, and the purchaser's money has been lying ready, without interest being made by it, the vendor must pay interest to the purchaser"; and this rule is reiterated in Dart (edition we have already cited), at page 990. These last citations, of course, relate to actions at law for damages, but they illustrate the broad principle on which the rules rest.

These authorities show that the rules as to allowances of interest are of the broadest character, and go to the full extent of making the purchaser entirely good in case of default on the part of the vendor, as the vendor is made good in the case of default on the part of the purchaser. One receives the land with all the rents and profits, and the other his money with all interest thereon; and, so long as the question relates to liquidated payments of purchase money and deposits,

it is impossible to perceive any substantial principle which should fail to give a lien wherever one party or the other is entitled to his interest. To sum up, all the authorities use language broad enough to cover a deposit, whether it is paid into the hands of a stakeholder or to the vendor, and none of them make any distinction on that account; and there is no distinction in principle that we can see. Therefore, in this case, the purchaser had not only a claim against the bankrupt for interest on the deposit, but also a lien on the land therefor.

The decree of the District Court is reversed; the case is remanded to that court, with directions to enter a decree allowing interest on the deposit and a lien on the land, or the proceeds thereof, to secure the payment of the same, in accordance with our opinion passed down this day; and the appellant recovers his costs of appeal.