**THOMPSON v. TERMINAL SHARES, Inc.,**
et al.

No. 279.

District Court, W. D. Missouri,
St. Joseph Division.

April 9, 1936.

Jerome N. Frank, of New York City, and Ernest A. Green (of Green, Henry & Remmers), of St. Louis, Mo. (J. Porter Henry, of St. Louis, Mo., on the brief; Culver, Phillip, Kaufmann & Smith, of St. Joseph, Mo., of counsel), for plaintiff.

Godfrey Goldmark, of New York City, and I. N. Watson, Henry N. Ess, and Elton L. Marshall, all of Kansas City, Mo., for trustee Guaranty Trust Co. of New York.

Richard L. Douglas, of St. Joseph, Mo., Henry L. Jost, of Kansas City, Mo., and William B. Cockley, of Cleveland, Ohio, for trustees Alleghany Corporation, John P. Murphy, Henry A. Marting, and John J. Murray.

David W. Peck, of New York City, and I. N. Watson, Henry N. Ess, and Elton L. Marshall, all of Kansas City, Mo., for trustee Marine Midland Trust Co. of New York.

OTIS, District Judge.

This proceeding was instituted in the (state) circuit court of Buchanan county, Mo., whence it was removed to this court on the petition of certain of the defendants, including defendant Terminal Shares, Inc. No personal service was had on the defendant Terminal Shares, Inc., a non-resident of the state of Missouri. It was sought to bring that defendant within the jurisdiction of the state court by attachment of personal property situated within the jurisdiction of the circuit court and by the service provided for in section 739 of the Revised Statutes of Missouri for 1929 and companion sections (Mo.St.Ann. § 739 et seq., p. 959 et seq.). In this court the named defendant has moved to vacate the order for substituted service, to quash service of process thereon, to quash the publication ordered by the state court, to vacate and set aside the order for the issuance of the attachment, and to quash the writs of attachment and writs of garnishment and the service thereof.

How the motion should be ruled depends on whether the petition is of such a nature as will support a writ of attachment and the service here attempted.

Although the petition is in 478 printed pages, sufficiently for present purposes it may be thus epitomized: Plaintiff is the trustee in bankruptcy of the Missouri Pacific Railroad Company. On December 31, 1930, the railroad company entered into written contracts with Terminal Shares, Inc., for the purchase from it of certain described personal property (shares of stock in certain corporations and other personal property). Upon the agreed purchase price ($15,965,201) the railroad company has paid $3,200,000. None of the property purchased has been delivered to the purchaser. The contracts of December 31, 1930, are void or voidable (facts are pleaded supporting this conclusion). The prayer of the petition is that the contracts be rescinded; that an equitable lien in the personal property described in the contracts be declared; that that lien be enforced; and that certain injunctive orders be made pending final hearing.

1. This petition is for relief in equity. In an equitable proceeding under Missouri law as construed by the Supreme Court of Missouri writs of attachment will not issue. State ex rel. v. Blair, 238 Mo. 132, 142 S.W. 326; Gage v. Gates, 62 Mo. 412; Lackland v. Garesche, 56 Mo. 267. See, also, opinions of Missouri Courts of Appeals: Beyer v. Trust Co. et al., 63 Mo. App. 521; Brumback v. Weinstein et al., 37 Mo.App. 520; Bachman v. Lewis et al., 27 Mo.App. 81; Atwood v. Hale et al., 17 Mo.App. 81. The Court of Appeals for the Eighth Circuit has so interpreted the opinions of the Missouri courts, Lafkowitz et ux. v. Jackson, 13 F.(2d) 370, as has also this court, German v. Universal Oil Products Co., 6 F.Supp. 53.

Recognizing the construction placed on the Missouri attachment statute by the Missouri courts, although expressing the opinion that the Supreme Court of Missouri might now rule otherwise, learned counsel for the plaintiff make a somewhat desperate effort to bring this case within the rule.

That, in the preparation of their encyclopedic petition, they had not the slightest intention of stating a cause of action at law, is obvious. They even christened the petition "A petition in equity to enforce equitable lien for injunction or other equitable relief." The prayer asks only for equitable relief. Indicia of a proceeding in equity are on every page of the petition. In the brief, however, they assert that (presumably all unintentionally and purely accidentally on their part, and they are very learned counsel) they really buried in the petition at least the makings of a cause of action at law. Conceding that such a cause of action, if any, is commingled with the cause of action in equity, they assert that diligent analysis of the voluminous petition will discover it. By a major operation penetrating into the very bowels of the petition they have turned up, they say, a cause of action at law which they thus describe: "There can be no doubt that un-

der the facts set forth in plaintiff's petition * * * a cause of action at law for the recovery of the $3,200,000 wrongfully received by defendants from the plaintiff's cestui que trust, the Missouri Pacific Railroad, has been stated. * * *"

Certainly this is grasping at a straw.

While the Missouri Code abolishes formal distinctions between causes of action at law and in equity, the real distinctions still exist. "The distinction between law and equity is as naked and as broad as ever." Magwire v. Tyler et al., 47 Mo. 115, 128, 129. "Under our [the Missouri] judicial system the distinction between law and equity is as clearly observed as it is under the systems in vogue in those states in which separate courts are held for the disposal of equity cases." State ex rel. v. Evans, 176 Mo. 310, 317, 75 S.W. 914, 915.

"Whether a cause arising in the [state] circuit court is to be judged to be an action at law or a suit in equity must depend on the facts of the case * * * the substance of the controversy must control the decision of the question. If the pleader in his petition, * * * has, through misconception of the nature of the cause, added something inconsistent with its true nature, such * * * will not change its character in respect to the question as to its being an action at law or a suit in equity." State ex rel. v. Evans, supra, 176 Mo. 310, loc. cit. 317, 75 S.W. 914, 915.

The suggestion that certain facts, which clearly and necessarily are alleged for the purpose of stating a cause of action in equity, should first be isolated, then segregated, then lifted out of the context of the petition, and so separately considered and thereafter ruled as constituting a cause of action at law, when a cause of action at law never was intended to be stated, when no legal relief is prayed, is a suggestion that cannot seriously be entertained.

2. The validity of the service sought to be obtained by the plaintiff in this case depends on whether the petition states a cause of action included among those to which such substituted service is restricted by section 739, R.S.Mo.1929 (Mo.St. Ann. § 739, p. 959). Under that statute such service may be had "in suits * * * for the enforcement of * * * liens against * * * personal property, and in all actions * * * in equity, which have for their immediate object the enforcement * * * of any lawful right, claim or demand * * * against any * * * personal property within the jurisdiction of the court."

The question then is, Does this petition state a cause of action for the enforcement of a lien against personal property? Counsel for plaintiff claim it does.

The contentions are: (1) The Missouri Pacific was vendee and Terminal Shares, Inc., was vendor in contracts for the purchase of personal property; (2) the personal property was of such a character as that the vendee would be entitled to a decree of specific performance of the contracts; (3) the vendee in a contract for the purchase of personal property of such a character as that an action for specific performance will lie to enforce the contract has, from the inception of the contract, an equitable lien upon the personal property involved in the transaction.

The petition does allege that the Missouri Pacific was vendee in a contract for the purchase of personal property. The principal part of that personal property was all of the stock in certain corporations owning railroads and railroad terminal facilities and other real properties. A contract for the purchase of personal property of this character may be one for the enforcement of which an action for specific performance will lie. Whiting v. Land & Sheep Co., 265 Mo. 374, 177 S.W. 589. But it is very doubtful whether the contracts here are so enforceable. I find it unnecessary to discuss the question.

The prime question remains, whether a vendee in a contract which is specifically enforceable does have an equitable lien on the personal property involved to secure partial payments made on the purchase price. The theory that the vendee has such a lien is the very cornerstone of plaintiff's argument.

The theory is entirely new in American law. Not one opinion of any American court presents or relies upon it. Situations in which it might have been asserted are legion, since specifically enforceable contracts for the purchase of personal property daily are entered into in great number. That the theory never, in our whole judicial history, has found recognition in the opinions of our courts, strongly indicates that bench and bar alike have rejected it as without validity. Indeed, I do not find that any American lawyers ever have asserted this theory as one obtaining

in our law excepting plaintiff's counsel and Professor Walter Wheeler Cook of Johns Hopkins University.

That the vendee in a contract for the purchase of land has a lien generally (but not universally) is recognized. Plaintiff's counsel say this lien "is not merely an aspect of the law of real property." They contend that the reasons for the lien in the case of a contract for the purchase of land equally support a lien in the case of specifically enforceable contracts for the purchase of personal property. They say: "* * * The vendee's equitable lien springs from the doctrine that in equity the purchaser is considered the owner of the property from the moment when the contract is signed; and, as that doctrine, in turn, arises out of the right of specific performance, it plainly appears that the purchaser's lien is not a doctrine exclusively applicable to real estate but is generally applicable wherever a contract is specifically enforceable."

Obviously the force of this contention depends on the accuracy of the assertion that the "doctrine that in equity the purchaser (of land) is considered the owner of the property from the moment the contract is signed * * * arises out of the right of specific performance."

But counsel have not called my attention to any language in any English or American opinion to the effect that the doctrine mentioned does arise out of a right to specific performance, and I have found no such opinion.

The leading English opinion is in Rose v. Watson, 10 H.L.Cas. 672. In that opinion the Lord Chancellor thus supported the equitable lien decreed in that case: "When the owner of an estate contracts with the purchaser for the immediate sale of it, the ownership of the estate is, in equity, transferred by that contract. Where the contract undoubtedly is an executory contract, in this sense, namely, that the ownership of the estate is transferred subject to the payment of the purchase money, every portion of the purchase money paid in pursuance of that contract is a part performance and execution of the contract and to the extent of the purchase money so paid, does, in equity, finally transfer to the purchaser the ownership of a corresponding portion of the estate."

Summarizing the English cases, the Court of Appeals for the First Circuit said (Everett v. Mansfield, 148 F. 374, 376, 8 Ann.Cas. 956): "They are based on the well-known fundamental rule that in equity what is agreed to be done is regarded as done; so that, from the time that a contract is made for the purchase of real estate, the vendor is often held as, in a certain sense, a trustee for the purchaser, and the purchaser is regarded, in a certain sense, as the real owner of the land, so that each, on the ordinary equitable rules, has a lien for his protection."

Summarizing all of the American and English cases on the subject, the annotator, in 45 A.L.R. 353, finds that the doctrine of equitable lien in land purchase cases is bottomed upon the "familiar principle that in equity the purchaser is regarded as the owner, subject to liability for the unpaid price, and the vendor as holding the legal title in trust for him."

The only opinion which has been cited which makes any reference to a relation between the right to an equitable lien and the right to specific performance is in Haughwout & Pomeroy v. Murphy, 22 N.J.Eq. 531. There it is said (22 N.J.Eq. 531, loc. cit. 546, 547): "In equity, upon an agreement for the sale of lands, the contract is regarded, for most purposes, as if specifically executed. The purchaser becomes the equitable owner of the lands, and the vendor of the purchase money. After the contract, the vendor is the trustee of the legal estate for the vendee. * * * It is upon the principle of the transmission by the contract of an actual equitable estate, and the impressing of a trust upon the legal estate for the benefit of the vendee, that the doctrine of the specific performance of contracts for the sale and conveyance of lands mainly depends."

The doctrine that in a contract for the purchase of lands the vendee is the equitable owner of the lands or of an interest in them does not then depend upon the right of the vendee to specific performance. A more accurate statement is that the right to an equitable lien and the right to specific performance in connection with land purchase contracts both rest, in part at least, on a common foundation. The first right does not depend nor rest upon the second. They are alternative remedies, as is pointed out by the Supreme Court in Townsend v. Vanderwerker, 160 U.S. 171, 182, 16 S.Ct. 258, 40 L.Ed. 383.

If the right to an equitable lien in connection with land purchase contracts does

not depend on a right to specific performance, then the whole contention of counsel fails. If the contention went further than it does go, if it were contended that, when specific performance is allowed to enforce contracts for the purchase of personal property, the right to specific performance rests on the maxim that in equity what· is agreed to be done is regarded as done, that contention too would fail, if applied here. In those rare cases where contracts for the purchase of corporate stock are held specifically enforceable, the sole basis for specific performance is the inadequacy of legal remedies. It is elementary that specific performance of contracts for the purchase of land does not rest on that basis. 58 C.J. 1024.

I resolve against the plaintiff the contention that, upon the facts pleaded, he has an equitable lien.

3. Finally it is contended (but not with much earnestness) by plaintiff's counsel that the defendant Terminal Shares, Inc., has, against its declared intention in the motion now under consideration, by inadvertence entered a general appearance to the cause. The basis for this contention is that this defendant filed in support of its motion an affidavit purporting to show that the defendant had no legal title to the property sought to be attached at the time of the attachment; that its interest in that property then was equitable only, and not, therefore, subject to attachment. The proffer of such an affidavit for such a purpose constitutes no general entry of appearance. Gilmore v. Robillard (C.C.A.) 44 F.(2d) 295. It is contended also that by the mere filing of a petition to remove this case from the state court the defendant Terminal Shares, Inc., entered its general appearance to the cause. The petition to remove was itself specially limited, but, if it had not been, it still would not have constituted a general appearance. General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U.S. 261, 268, 43 S.Ct. 106, 67 L. Ed. 244.

4. Questions argued but not discussed in this opinion have been considered.

### Order.

The motion of Terminal Shares, Inc., to vacate the order for substituted service, to quash service of process thereon, and to quash publication and to vacate and set aside the order for the issuance of attachment and to quash the writs of attachment and writs of garnishment and service thereof, is sustained. It is so ordered.